This action is prosecuted for the recovery of damages sustained by the plaintiff while in the employment of defendant, by reason of alleged negligence. The defendant denies that it was guilty of negligence (138) and alleges that plaintiff was injured by reason of his own negligence. For a further defense defendant sets up a release executed by plaintiff. In reply to this new matter plaintiff avers that at the time of the execution of the release he did not possess sufficient mental capacity to make the contract and that the release was procured by fraud and undue influence. For the purpose of ascertaining the truth in regard to these several allegations, appropriate issues were submitted to the jury, all of which were found in accordance with plaintiff's contention. The facts, as they are related to the exceptions, are set forth in the opinion. From a judgment upon the verdict, defendants appealed.
The record contains thirty-eight assignments of error. Several of them become immaterial by reason of the verdict upon the first issue, which was directed to the execution of the release. The jury found that plaintiff did not, for a valuable consideration, "release and absolve the defendant from all liability on account of the injury." In view of the testimony and his Honor's instruction, this finding involves the conclusion that plaintiff did not possess sufficient mental capacity to understand its effect upon his legal rights when he signed the release. The second issue, therefore, as his Honor instructed the jury, became *Page 129 
immaterial and the several exceptions to the rulings bearing upon it need not be considered. Sprinkle v. Wellborn, 140 N.C. at page 181.
It is but just to the persons who were present and witnessed the execution of the release, to say that we find no evidence of fraud or undue influence practised upon plaintiff. He testified that he did not know or understand what he did and had no recollection that he ever signed the release. There was ample evidence, both upon his own examination and other witnesses, that plaintiff was in no fit mental condition to be entrusted with the duties which he undertook to discharge. (139) Much of his testimony is difficult to understand or reconcile. This, however was the duty and province of the jury. The release recites a consideration of one dollar and contains no stipulation or promise as to employment, although there is evidence that such was the real consideration.
The Court permitted Mrs. Beard to testify that, in her opinion, plaintiff did not at the time he signed the release have "sufficient mental capacity to enable him to have reasonable judgment as to the effect of it and what it purported to be." We cannot commend the form of the question, but do not think it sufficiently obscure to constitute reversible error. Evidently she used the word "judgment," which is criticised by defendant, as synonymous with "understanding." It was competent for the witness to express an opinion. Bost v. Bost, 87 N.C. 477; Horah v. Knox, 87 N.C. 483.
Dr. Hanes, who had attended plaintiff, was permitted to testify that, in his opinion, the fall described by plaintiff would produce the mental condition in which he found him; also that a blow on the "outer skull," leaving no sign, might be sufficient to break the "inner skull," giving his reasons and describing the effect upon the mind of a person sustaining such an injury. We do not think that defendant's exception to this testimony can be sustained. The witness was not expressing an opinion upon a hypothetical case. He had treated plaintiff and knew the conditions with which he was dealing. There was no controversy regarding the manner in which plaintiff sustained the injury. The exception does not present the question as in S.v. Bowman, 78 N.C. 509, or Summerlin v. R. R., 133 N.C. 550. It is rather within the principle announced in Jones v. Warehouse Co.,137 N.C. 337.
We have carefully examined his Honor's instruction regarding the quantum and character of mental capacity requisite to make a valid contract, and find that it is in accordance with the decisions (140) of this Court and standard authorities. Sprinkle v. Wellborn,supra, where the cases are collected. His Honor was clearly correct in saying that when insanity is once shown to exist, there is a presumption that it continues — open, of course, to testimony showing a *Page 130 
restoration of mental soundness. There was evidence that at times plaintiff was mentally unsound — non-sane. We have examined the other exceptions to rulings bearing upon this issue, and find no error.
It appears that after the injury sustained by plaintiff, he again entered into defendant's employment. That some time thereafter he was discharged. Defendant claims that he was discharged because of the use of morphine and whiskey. It also claims that plaintiff's mental condition is attributable to injuries received several years before the one complained of. There was a large quantity of evidence bearing upon these contentions.
Among other testimony regarding the discharge of plaintiff, defendant proposed to introduce two letters purporting to be signed by plaintiff, which he denied writing or sending. Defendant's witness, assistant superintendent, testified "that he received in due course through the mail the letter," etc. The letter was, upon plaintiff's objection, excluded. We concur with his Honor's ruling in this respect. While it is well settled that where it is shown that a letter was addressed, stamped and mailed, there is a presumption that it was received by the addressee, it cannot be that the receipt of a letter purporting to be signed by a person is any evidence that it was written by such person. No authorities are cited to sustain the exception.
Defendant offered to introduce copies of two letters addressed to the plaintiff by its assistant superintendent. In respect to these copies, the record states: "The plaintiff having testified, after examining (141) the papers, that he received the original, of which there were copies, and it being admitted that the defendant, on the convening of the Court in the afternoon on which the trial of the case was begun, had notified the plaintiff to produce the original in Court." It was also admitted that plaintiff resided about two miles from Mount Airy, the trial being had in Greensboro. That a train left Greensboro at 4:30 in the afternoon for Mount Airy, returning the next morning at 12 o'clock. Plaintiff and his wife were in Greensboro attending the Court. The offer to introduce the copies was made in the afternoon of the second day of the trial. The copies were excluded by the Court. There is no admission or finding regarding the distance between Greensboro and Mount Airy. We take note of the fact that it is some seventy miles.
The case was argued upon the theory that the Court excluded the copies because the notice to produce the originals was not sufficient in point of time. We concur in this view. "Generally, if the party dwells in another town than that in which the trial is had, a service on him at the place where the trial is had, or after he has left home to attend the Court, is not sufficient." Greenleaf Ev., sec. 563. Certainly *Page 131 
the plaintiff was not called upon to go himself or send his wife away from the town in which his case was being tried to find and produce the letters. No reference is made to them in the pleadings, nor was there anything in the case to suggest to the plaintiff the probability that they would be called for. The defendant did not offer to ask the plaintiff on cross-examination regarding the contents of the letter, as it may have done. Kalk v. Fielding, 50 Wis. 339.
Whether, upon plaintiff's admission that he had received the original letter of which the paper-writing shown him was a copy, did not entitle defendant to read the copy without having given the notice, is not raised in the argument. It would seem, however, that such admission relieved the plaintiff of the duty of giving the notice. The (142) authorities are not entirely in harmony, but upon the reason of the thing, if the person to whom a letter is addressed, and who admits its receipt, admits that the copy shown him is a correct transcript of the original, then, as against him, it should be admissible. The purpose of requiring the original, being the best evidence, is met. It does not appear whether the "copy" was a letter-press copy, which is really a duplicate original. We have examined the "copies" offered in evidence, and, in the light of the elimination by the jury of the release, they do not appear to be material to either of the issues. They referred to the reasons of the defendant's agents for discharging the plaintiff, and their substance was fully brought out in the examination of the witnesses. Several physicians were examined in regard to the plaintiff's mental condition and habits and the causes thereof. The learned counsel for the defendant say that the introduction of the copies could have done the plaintiff "no possible injury." Their rejection was harmless error.
We are thus brought to consider the main question presented by the appeal. At the conclusion of all the evidence, defendant moved for judgment of nonsuit, and to the refusal of the motion, excepted. The testimony disclosed the following case: Defendant maintained a freight depot at Winston, "consisting of two parts connected by one floor, the west end warehouse building and rooms in which the employees worked; the east end consisting of a wide platform covered by a shed; in the floor on the side next to the railroad track were steps leading down from the platform to the track. These steps were cut into the platform about three feet; a railing had been placed around the steps, but was gone at the time of the injury. Plaintiff was employed by defendant as freight conductor. On the night of 26 June, 1903, being dark and stormy, he received orders to take charge of a freight train going to Greensboro. He got his way-bills from the freight office and with a (143) lighted lantern was going to his train, standing on the track. *Page 132 
The lights along the platform were out. As he came out of the freight office, the wind blew his lantern out; he did not return to light it, but continued along the platform, feeling his way with his feet. He was going south to reach the steps which he usually used for the purpose of going to his train. He says that he "never hardly used the steps" cut into the platform. In his efforts to use them on the night in question he lost his footing and fell, striking his head against the track. In his own language he describes the fall: "It was a very bad night; rainy, wind blowing, very dark, no light on the platform anywhere. I was feeling my way and fell head foremost down through the hole and struck my head against the rail and wheel together. I remember hitting my head between the wheel and the track. It seemed to cover my whole head. I don't remember anything else until the next day at dinnertime. There was no railing at all, nothing to protect me whatever — simply a hole and a pair of steps. I was just feeling along with my feet. There was no light anywhere."
Upon cross-examination he says that he usually got his way-bills by going around the other way. "When I fell, I had started down. I knew the steps were there; do not know how many; think more than three."
Defendant contends that upon these facts his Honor should have held, as a question of law, that plaintiff was guilty of contributory negligence. It is clear that it was negligent to permit the platform to be in darkness while plaintiff was required, in the discharge of his duty, to pass along it. This is especially so when we recall that the steps cut into the platform some two and a half or three feet and that the railing had been removed. Defendant says, however this may be, it supplied the plaintiff with a lantern, and that when blown out by the (144) wind it was his duty to return to the freight office and relight it. The principles of law governing the case are well settled. If it can be said that the plaintiff's duty to return to the office and light his lantern was so manifest and his failure to do so clearly negligent, so that two reasonable minds could come to but one conclusion in regard thereto, the authorities sustain defendant's contention. On the other hand, if measured by the standard of conduct which would control the reasonably prudent man, under similar circumstances, his conduct is capable of more than one reasonable inference, the decision of the question was properly left to the jury.
Plaintiff was not injured by reason of falling into a hole, the existence of which was unknown to him. There was no negligence in the position or construction of the steps, but it was the duty of defendant to have and maintain sufficient light along the platform and near the steps or to have a railing so that their employees could use them with reasonable *Page 133 
safety. This was a positive duty, the failure to perform which makes the defendant liable, unless the danger in using them was so manifest and obvious that no prudent man would do so in the absence of lights. In passing upon this question his Honor was compelled to take into consideration the whole evidence and fix the standard of duty, applying the legal test of prudence. It cannot, we think, be said that, using his senses, members, and knowledge of surrounding conditions, as described by plaintiff, he was manifestly regardless of his safety. Common observation teaches us that many persons, clearly within the pale of ordinary prudence, feel their way along steps in the dark. We can hardly think that by doing so they can be said to be clearly and obviously negligent. While it may have been wise for the plaintiff to return and relight his lantern, yet, in view of the fact that the train of which he was ordered to take charge was ready to move, and the time for its departure had arrived, that it was late at night and (145) that the same wind which blew out his lantern would probably do so again, we think that he was entitled to have his conduct, in this respect, submitted to the jury.
The defendant excepted to the following instruction given by his Honor: "Although the plaintiff's lantern was blown out, he had a right to proceed on to his train, if he thought he could safely make the journey to the same by exercising ordinary care on his part. It was the duty of the defendant to provide a light near enough the steps which was to be sufficient to enable the plaintiff on a dark night to see his way to the said steps and down the same safely. If the defendant failed to furnish said light and this was the proximate cause of the injury, the jury will answer the third issue `Yes.'"
This instruction was given in response to plaintiff's request, and, if not modified or explained in other parts of the charge, is erroneous.
The standard of duty is not what plaintiff thought he could safely do, but what a reasonably prudent man, under the same circumstances, would do.
When his Honor reached the fourth issue, involving plaintiff's conduct, he said: "I charge you if the plaintiff, after his light had blown out, continued onward to his train and used ordinary care in approaching and finding the said steps, and he could not find them by exercising such care because of the fact that the defendant offered to him no light on the said platform by which he could see the steps, or if the plaintiff would have been prevented from falling down the steps by the railing having been placed around the steps, and these, or either of them, were the proximate cause of the said injury, the jury will answer the fourth issue `No.' Ordinary care is the care of a prudent man, mindful and careful of his own safety, and it is for you to find from the evidence *Page 134 
whether the plaintiff was in the exercise of care in going in the dark after his lantern was blown out, or did ordinary care require (146) that he should relight his lantern before going forward toward the steps inside the platform."
To this instruction defendant excepted. The criticism of the language is that it "withdraws from the consideration of the jury whether the plaintiff was or was not negligent in proceeding down the stairway after the wind had extinguished his light, without distinguishing, for the jury, the relative degree of care requisite to constitute ordinary care in the two cases."
The standard of duty imposed upon plaintiff is the same in both cases. He must exercise ordinary care, or that care which the ideal prudent man would have exercised under the existing conditions. What would constitute such care on the part of a person walking along the platform properly lighted, or doing the same thing in the dark, would, of course, differ essentially. If, after his light was extinguished, plaintiff had exercised no more care to avoid injury than before, he could not be said to exercise ordinary care. This demand upon him he met by "feeling his way along with his feet" — a most natural mode of avoiding the hole in the floor and going down the steps when he reached them. He appreciated the necessity for caution and says that he exercised it, and in this the jury found with him. If he had walked briskly along the platform when dark, in the same manner as if lighted, we apprehend the Judge would not have hesitated to enter judgment of nonsuit. The defendant's negligence, in not having light, did not absolve him from the duty of acting, under the circumstances, as a prudent man.
The real pivotal question in this case is, whether it was plaintiff's obvious duty to return to the freight office and relight his lantern. Suppose that he had done so, and it had, by the same cause, been again extinguished: Must he refuse to perform the duty imposed upon him to take the train out, or was it not his duty to try, by the exercise of ordinary care, to reach his train by using the way provided for doing so?
The error pointed out in the plaintiff's prayer, applied to the (147) third issue, directed to defendant's negligence, was harmless. When his Honor instructed the jury in regard to the plaintiff's duty, he avoided the error.
We have examined the entire record with care. The case is, in many respects, peculiar. The testimony in regard to plaintiff's mental condition and the causes producing it is conflicting and far from satisfactory. His Honor submitted the questions debated fairly, and the jury have settled the facts. The defendant excepted to his Honor's *Page 135 
instruction in regard to the measure of damage, but the exception is not assigned for error, nor noted in the brief. We therefore treat it as abandoned.
There is no reversible error. The judgment must therefore be
Affirmed.
Cited: Ivey v. Cotton Mills, post, N.C. 198; Harvell v. Lumber Co.,154 N.C. 263.