# CHARLESTON.

## JOHNSON v. CITY OF HUNTINGTON.

Submitted February 27, 1917.   Decided April 3, 1917.

1.  MUNICIPAL CORPORATIONS—*Streets—Liability for Injuries—Statute.*
    Although §56a49, ch. 43, Code, makes absolute the duty of a municipal corporation to keep and maintain its streets in a reason-·ably safe condition for the public use thereby intended, it does not necessarily follow that a municipality is liable for injuries inflicted on the highway by persons using it in a lawful and proper manner. (p. 182).

2.  SAME—*Streets—Construction of Building—Injury—Liability.*
    If the injury is caused by the negligence of the owner of property in the process of improvement by the construction of a building thereon adjacent to the sidewalk, or by the contractor engaged
    80 W. Va.

in making the improvement, the owner or contractor generally is liable primarily for the consequences of the negligent act, although in some circumstances the municipality may also be liable.   (p. 182).

3.  SAME—*Use of Street—Improvement by Abutting Owner—Personal Injury.*

Where it is equally the duty of such municipality and the owner of abutting property to keep and maintain a sidewalk in repair and reasonably safe, it will be liable jointly or severally with such owner to one who is injured in consequence of his neglect to do so.   (p. 182).

4.  SAME—*Obstruction of Street—Personal Injury.*

Not every obstruction to the free use of a public street, whether authorized or unauthorized by a municipal corporation, irrespective of its character or purpose, constitutes a nuisance or is actionable in damages.   The right of the public to the free and unobstructed use of the highway is subject to reasonable and necessary limitations and restrictions.   (p. 183).

5.  SAME—*Obstruction of Street—Permission—Duty.*

In case of necessity, as the erection or repair of buildings upon adjacent private property, a municipality may permit a temporary obstruction of a street or sidewalk, but is bound to take proper precaution to warn the public of the danger occasioned by the obstruction.   (p. 183).

6.  SAME—*Permission to Occupy Street—Negligence—Liability.*

The mere grant of permission so to occupy such a street or sidewalk when necessity requires, does not necessarily impose liability upon the municipality for the negligent exercise of the authority granted, unless it suffered the street or sidewalk to remain in such condition as actually to endanger the safety of persons lawfully using the easement.   (p. 184).

7.  SAME—*Permission to Use Streets—Negligence—Liability.*

If the act which a city licenses a person to commit in a street within its limits is not unlawful or inherently dangerous, so as to become a public nuisance, and injury flows merely in consequence of the negligent manner in which the act is performed, the city is not liable.   (p. 184).

8.  SAME—*Temporary Obstruction—Safeguards—Liability.*

But a city is liable to a person injured while lawfully using a street where it fails to provide or cause to be provided barricades, barriers or lights or other appropriate means to safeguard the traveling public from injuries due to a temporary obstruction lawfully permitted in the erection of a building on private property under the principle of necessity.   (p. 184).

Action of trespass on the case by Anna Johnson against the City of Huntington. Demurrer to declaration overruled, and question whether the declaration states a cause of action certified to the Supreme Court from circuit court.

*Reversed, demurrer to declaration sustained, with leave to amend, and cause remanded.*

*Marcum & Shepherd* and *J. W. Perry,* for plaintiff.

*F. M. Livezey,* for defendant.

LYNCH, PRESIDENT:

In an action of trespass on the case by Anna Johnson against the City of Huntington, for personal injuries sustained from an alleged defective and unsafe condition of one of its sidewalks, the circuit court overruled a demurrer to the declaration; and the propriety of that ruling has been duly certified to this court for determination, as allowed by §1, ch. 135, Code. Whether or not the pleading states a cause of action is the sole question presented for consideration.

The declaration, consisting of one count, sufficiently avers the public character of the sidewalk, and the duty of defendant to keep it in good order and repair and free and safe "from dangers, hurts and injuries from projections, obstructions and structures maintained and hanging over, across and above it". These averments are not assailed.

But the demurrer does challenge the sufficiency of that part of the declaration which attempts to assign an actionable breach of the duty averred, principally because of uncertainty in the allegations descriptive of the cause of injury. Plaintiff charges that on the day of the accident "there was being constructed on the east side of Ninth street, and binding on the east side of the sidewalk aforesaid, a certain building", and defendant then and there negligently "allowed, permitted and caused to be built and erected and maintained a certain scaffold of plank and timbers" over and along the sidewalk for the purpose of protecting persons lawfully using the same from dangers and injuries incident to the construction of the building, and certain

timbers and planks then and there negligently and injuriously were caused, allowed and permitted by defendant to be, remain, project and hang over, above, across and along the sidewalk, and which said scaffold and timbers and planks then and there were erected and maintained so negligently as to be unsafe and inadequate to afford protection to such persons from injuries and dangers arising from the erection of the said building, and from the said scaffold, planks, boards and timbers themselves, by reason and means whereof the sidewalk negligently and carelessly was caused, allowed and permitted to become and remain in bad order and out of repair and dangerous and unsafe for persons using the same; ''whereby, while plaintiff was on the day and year aforesaid, at the place aforesaid, lawfully using said street and passing along and over the same and under the scaffold, planks and timbers aforesaid, and was then and there in the exercise of ordinary care, and was without warning or knowledge of the danger to which she was then and there exposed, a certain large beam, plank or piece of timber, the exact size and dimensions and name of which is to the plaintiff unknown, fell upon the plaintiff from a great distance, to-wit, the distance of 12 to 20 feet, and struck her on the head'', and caused the injury of which she complains.

The criticism directed against the last allegation is that neither the place from which the piece of timber producing the injury, nor the one immediately causing the negligent act averred, is definitely pointed out; it being contended that the city would in nowise be liable for the mere negligent act of a workman in permitting timber to fall from the building itself during the process of construction, if such was the fact, as well it may have been so far as the allegations of the declaration are concerned. For aught that appears, this indefiniteness may have been intentional on the part of the draftsman, on the theory that the city would be responsible in damages for injury resulting either from the defective condition of the scaffold or from the negligent casting of timber from the building into the street.

It must be assumed that in describing the source or cause of injury, the draftsman in preparing the pleading advisedly

chose the term scaffold to designate the structure through the negligent construction and maintenance or use of which the injury complained of was occasioned, and that by that designation he meant to describe what builders and contractors usually term a scaffold, intending thereby to signify a single, temporary, horizontal platform, or a combination of several successive like platforms of different heights above the surface of the street, and supported by perpendicular poles, scantlings or ladders, as generally constructed, or suspended by ropes or chains, as sometimes done, and designed to serve as supports for workmen while engaged in the performance of the service rendered in the erection, repair or decoration of buildings, and as a place for the deposit of the materials used by them while so employed. This assumption seems unavoidable, because by no authoritative definition of the term "scaffold" does such a structure comprehend within its meaning a covering or an enclosure of the sidewalk in the form of a barricade or shed intended to provide against the infliction of injuries by timbers or other material falling therefrom upon pedestrians using the street in the usual manner for ordinary purposes. As so defined, a scaffold does not and its purpose is not to afford such protection. Yet by averment the declaration may, and by a forced construction in this instance does, show an intention to enlarge the meaning of that term so as to include an enclosure or structure the purpose of which was to prevent the infliction of injuries on pedestrians during the progress of the improvement described. The pleader may have had in mind, and intended to describe, a covered or enclosed passageway along and over the pavement adjacent to the lot on which the building was in process of erection, the use and purpose thereof, by whatever technical name known to builders and contractors, being the prevention of injuries by the falling of such timbers or material as that stated in the declaration.

Although by our statute upon a municipal corporation devolves an absolute liability for the defective maintenance of its public thoroughfares, it does not necessarily follow that a municipality is liable for injuries done by persons using its streets in a lawful and proper manner. If the injury is

caused by the negligence of the owner of the property improved, or by the contractor engaged in making the improvement, or by the employees of either of them, the contractor or owner generally is chargeable primarily with the consequences of the negligent act, although in some circumstances or conditions the municipality may also be liable therefor. This rule is laid down by 4 Dillon on Mun. Corp. (5th Ed.) §1725n in this language: "Where it is equally the duty of the city and the owner to keep the sidewalk in front of the premises in repair, both will be liable jointly or severally to one who is injured in consequence of their neglect to do so". And in §1727 the author adds: "If the person injured fail in his action against the municipality, this is no bar to an action by him against the owner of the nuisance".

Besides, not every obstruction, whether authorized or unauthorized by a municipality, constitutes a nuisance or is actionable in damages, irrespective of its character or purpose. "On the contrary, the right of the public to the free and unobstructed use of the street or way is subject to reasonable and necessary limitations and restrictions". 3 Dillon on Mun. Corp. §1168. While the carriage and delivery of fuel, grain and goods, or the deposit of building material in a street, may effect a temporary impediment to the right of public transit or travel, they are legitimate uses of the highway, notwithstanding its primary purpose is for public use. The same result may arise from necessary improvements in the street itself, or the improvement of abutting lots by excavations for cellars and for the foundations of buildings, the erection of buildings, and similar private uses. These render necessary or unavoidable the occupation of parts of the streets and sidewalks; and such impediments do not necessarily constitute encroachments upon the public easement. They are merely incidents or limitations upon its use. Because such improvements are necessary, the material required therefor, and scaffolds and other convenient instrumentalities, rightly may be placed in the street, if properly done and not unreasonably continued. But when occupied for these purposes, whether with or without the

permission of the municipality, the duty devolves upon it to see that the licensee or owner exercises due care in the erection or maintenance of such structures or obstructions to prevent injury to persons using the street in a lawful and proper manner, either by enclosing the street or that part of it so occupied by barriers, or giving warning by lights or in some other reasonable manner calling attention to the existing danger.  Or, as stated in *Stanton* v. *Parkersburg,* 66 W. Va. 392:  ''In case of necessity such city or town may permit a temporary obstruction of any of its public streets or sidewalks, but it is bound to take proper precaution to warn the public of the danger occasioned by the obstruction''. *Arthur* v. *Charleston,* 51 W. Va. 132.

The declaration, as contended, does not in express terms or by necessary implication point out the source from which or the agency by which was produced the negligent causal act resulting injuriously to the plaintiff.  As to these matters it is vague and indefinite.  It does charge that defendant ''allowed, permitted and caused'' the scaffold to be built and maintained in the sidewalk as a protection against injury to pedestrians, and that by reason of its negligent omissions as regards the safety of the sidewalk the beam or plank fell and injured the plaintiff.  But the causal connection between the construction or maintenance of the scaffold and the falling of the timber at best is obscure.  The allegation that defendant permitted and caused the erection of the scaffold, when coupled with other averments of the pleading, it may reasonably be assumed, means only that the city granted to the owner of the lot to be improved, or to his contractor for him, a permit therefor, and for this purpose to use so much of the sidewalk as reasonably was necessary to prosecute such work.  If so, the permission does not warrant an implication that the city actually participated in the performance of that labor.  The mere grant of such a permit clearly does not involve the liability of the municipality for the negligent exercise of the authority granted, or the negligence of workmen engaged in the construction of the building itself, unless it suffered the structure to remain upon the pavement in such condition as actually to

endanger the safety of persons lawfully using the easement. *Copeland* v. *Seattle,* 33 Wash. 415, 65 L. R. A. 333.    But hardly is it to be supposed that the owner or builder, either by himself or his agents, would be so grossly negligent as knowingly to permit a beam or other heavy piece of timber to fall from the scaffold into the street, if such were the fact, whether injury resulted therefrom or not.    "If the act which the city licenses a person to commit within its limits is not unlawful in itself or inherently dangerous, so as to become a public nuisance, and injury flows therefrom merely in conse-quence of the manner in which the act is performed, then the city is not liable." 5 Thomp. Neg. §5805.  But it is liable, ac-cording to the same author, §6015, where it fails to exercise reasonable care to require barriers, lights or other appro-priate means to safeguard the traveling public against tem-porary obstructions lawfully permitted in the erection of buildings under the principle of necessity.  *Warsaw* v. *Dun-lap,* 112 Ind. 576; *Grant* v. *Stillwater,* 35 Minn. 242; *Seneca Falls* v. *Zalmsky,* 8 Hun. 571.  The use of a street for such purposes is as legitimate as its use for travel; but the right must be exercised in a reasonable manner and with due re-gard for the safety and convenience of the traveling public, and due care demands of the owner of the property im-proved the exercise of the same degree of diligence in pro-viding warnings by visible signals at night and barriers or barricades whenever necessary to prevent injury to persons lawfully upon the highway.  He is not exonerated from the duty to furnish these means of protection by the grant of a permit to occupy part of the street in aid of his building operations.  *Blocher* v. *Dieco,* 99 S. W. 606; *Christman* v. *Meierhoffer,* 116 Mo. App. 46.  Nor does the grant suspend the duty of the city to exercise like care to keep the street so occupied in a reasonably safe condition for public use during the operation.  Its duty is not discharged merely by keeping the surface of its streets and sidewalks in safe condition.  For the same rule of liability applies with equal force to all dangerous defects or obstructions, whether over-head or at grade.  4 Dillon on Mun. Corp. §1705; note to *Elam* v. *Mt. Sterling,* 20 L. R. A. (N. S.) 506.  Some au-

thorities have, as they concede, carried this liability to its extreme limit in holding municipalities liable for injuries caused by the falling of ice and snow from the roofs of buildings adjacent to the street, or of cornices from such buildings, or of awnings, signs or similar structures. This liability they impose upon the theory that, as by statutes similar to ours, considered in connection with special charters granted by the legislature, there is conferred upon the municipality the power of taxation for general purposes, including the maintenance of their public highways, coupled with the duty to keep them in a reasonably safe condition, the power and the duty are commensurate, and that the negligent breach of the duty is sufficient to warrant liability in damages for a resulting injury.

But, as peculiarly applicable here, this court said in *Post v. Clarksburg,* 74 W. Va. 48, "the statute imposing absolute duty upon municipal corporations to keep their streets and sidewalks reasonably safe for use by the general public does not make them liable for injuries negligently inflicted by persons lawfully using such public ways upon one another"; and in the opinion at page 53, "clearly the statutory duty of a municipal corporation to keep its streets reasonably safe for use, though absolute, does not extend to the prevention of persons lawfully using the streets from injuring one another in the exercise of their rights".

So that the facts averred in the declaration, devoid of precision as the allegations are, state a cause of action for which the owner of the building, or the contractor engaged to construct it, exclusively or ultimately may be liable because of the injury of which plaintiff complains.

The reasons that we have assigned lead us to the conclusion that the demurrer to the declaration should have been sustained, with leave to plaintiff to amend so as to render the averments of that pleading more specific in the description of the cause of action on which she seeks recovery against the defendant; and such will be the order entered here, together with the award of costs against her.

*Reversed, demurrer to declaration sustained, with leave to amend, and cause remanded.*