THERON DEAN BROADAWAY v. KING-HUNTER, INC.

(Filed 6 January, 1953.)

**1. Municipal Corporations § 14a—**

A contractor constructing a sewer line along a city street under contract with the municipality is under substantially the same duty to the traveling public as the municipality would be if it were doing the work itself.

**2. Same—**

In excavating a ditch along a street for a sewer line, the contractor, though not an insurer of the safety of travelers, is under a legal duty to exercise care commensurate with the surrounding dangers and circumstances to warn travelers of the existence of an open ditch and otherwise protect them against injury therefrom.

**3. Same—**

Evidence tending to show that a contractor excavating a ditch along a dirt street in a city, placed flares at a distance so great from each other as to afford no light or warning at the place in question, and erected no other barricade, danger signal or sign, although municipal ordinance required any street obstruction to be protected with a sufficient number of red lights, and although its contract with the city required it to maintain all necessary barricades and sufficient red lights and danger signals, *is held* sufficient to be submitted to the jury on the issue of negligence of the contractor.

**4. Same—Evidence held not to disclose contributory negligence as matter of law on part of pedestrian falling into open ditch along street.**

The evidence tended to show that plaintiff walked from an intersection where no street light was maintained along a dirt street or alley some 125 feet to the beginning of a ditch in the middle of the street, that a flare at a compressor wagon marked the beginning of the ditch and that plaintiff walked around the ditch and sewer pipe lying on the ground and continued some 25 feet beside the ditch to the house of his destination, but that upon leaving the lighted house some time later to retrace his route, he could not see, and was feeling his way with his feet, when he stumbled over the pipe and fell into the open ditch at a place where no light was afforded by any flares or warning signals. The evidence further tended to show that plaintiff had no knowledge of any other route. *Held:* The evidence does not establish contributory negligence as a matter of law but raises conflicting inferences upon the issue for the determination of the jury.

**5. Trial § 23a—**

Where permissible conflicting inferences are supported by the evidence the issue is for the jury and not the court.

APPEAL by plaintiff from *Pless, J.,* April Term, 1952, of GUILFORD (Greensboro Division).

Civil action to recover damages for personal injuries alleged to have been sustained by the plaintiff, when at night he fell into a ditch dug by

the defendant pursuant to a contract it had entered into with the City of Greensboro for the laying of a sewer line in Brice Street in said city.

At the close of the plaintiff's evidence the defendant's motion for judgment of nonsuit was allowed—the judgment stating that the plaintiff is guilty of contributory negligence as a matter of law. From the judgment based on such ruling the plaintiff appealed, assigning error.

*H. L. Koontz and Shuping & Shuping for plaintiff, appellant.*
*Jordan & Wright and Perry C. Henson for defendant, appellee.*

PARKER, J. On 15 September, 1949, the defendant was engaged in the construction of a sewer line on Brice Street for the City of Greensboro. Brice Street is an unpaved public street in the city not wider than 15 feet, though wider at some places than others. The street had no sidewalks; its surface was uneven, and had the appearance of a rather rough and unimproved alley. The street runs in a general east-west direction. For the purpose of installing the sewer line the defendant on 15 September, 1949, had dug a ditch about 8 feet deep on Brice Street. The ditch was dug in about the middle of the street. From the intersection of Warren and Brice Streets to the entrance of the Bynum home is a distance of about 150 feet. The ditch extended east of the Bynum driveway about 25 feet and west of the Bynum home. The easterly 125 feet of Brice Street from Warren Street to a compressor wagon was unexcavated. The city had no street lights on Brice or Warren Streets.

On 15 September, 1949, about dusk dark the plaintiff arrived at the intersection of Warren and Brice Streets, where Daniel Womack lived, on his way to the home of Virginia Bynum on Brice Street to take lessons from her in sewing and tailoring. He was walking. Daniel Womack told the plaintiff there was a ditch down there. The plaintiff laughed, and said: "Yes, he'd be careful, he see'd it." When the plaintiff entered Brice Street he saw a compressor wagon across the ditch about 124 feet from the intersection of Brice and Warren Streets. On the east side of this wagon was a little flare light, a black pot with the flare sticking up. Sewer pipes were lying in the street along the south side of the open ditch to the Bynum home in an irregular manner. A little dirt was lying on that side. A great pile of dirt was on the north side of the ditch. The ditch was cut through some rock and some big rocks were thrown out in the street. In going down the hill on Brice Street there was sufficient light for the plaintiff to see the open ditch, and he walked around, about and over the pipes. There were no lights of any sort on or along or about the open ditch except the flare pot east of the wagon and a flare pot along the ditch below the Evans home west of the Bynum home on Brice Street. This flare pot cast no light at the point where the plaintiff fell in the

ditch, or along the street where he was walking before he fell in. From the street intersection to the Bynum driveway there was a wire fence along the south side of Brice Street for about 125 feet, and then a rock wall about 2½ or 3 feet high to the Bynum driveway. From the edge of the ditch to the fence was about 5 or 6 feet. The plaintiff walked down the street to the Bynum home entering by the driveway.

The plaintiff was in the Bynum house until about 10 :00 p.m. doing close work with a needle and thread under a bright light. He left then to return home carrying in his hand the suit he was making in a bundle. He left by the side door and driveway—the way he entered. No lights were burning on the outside of the Bynum house. The plaintiff saw it was "awfully dark out there." He did not ask the Bynums for a light of any kind. He struck no matches—not remembering whether he had any in his pocket or not. When he came out of the Bynum home, there were no lights along the ditch betweeen the Bynum home and the wagon. He could not see the ditch or the light east of the wagon. He knew the open ditch and pipes were there, and tried to feel his way around with his feet and get out by going along in that manner. He bumped against a pipe with his feet and then bumped up against another pipe and finally fell in the ditch receiving the injuries he alleges in his complaint.

The plaintiff had been to the Bynum's before, but he did not know the ditch was there that night until his arrival. There is a walkway from the back of the Bynum home to Poe Street. Poe Street comes to the Bynum woodhouse on the back of their lot. The plaintiff did not know anything about there being any such way in and out of the Bynum's. That night he made no inquiry as to a way out.

There is no evidence that the defendant erected and maintained any barricade, danger signal or sign, except the flare pot east of the wagon and the flare pot west of the Bynum home below the home of one Evans.

On 15 September, 1949, the following ordinance of the City of Greensboro was in full force and effect: Chapter 45, Section 8, of the Code of the City of Greensboro is as follows : "Protection of Obstructions. Every person causing or allowing any obstruction to remain on any street. or sidewalk at night shall protect the same with a sufficient number of red lights."

The following is a part of the contract between the City of Greensboro and the defendant for the construction of water and sewer improvements on Brice Street: "The contractor shall provide, erect, and maintain all necessary barricades, suitable and sufficient red lights, danger signals and signs, provide a number of watchmen and take all necessary precaution for the protection of the work and safety of the public."

This Court has said in *Presley v. Allen & Co.,* 234 N.C. 181, at page 184; 66 S.E. 2d 789 : "It seems to be conceded, and rightly so, that the

defendant, being in charge of the excavation project, was under substantially the same legal duty to the travelling public as would the Town if it had been in direct charge of making the excavation for some purpose of its own. *Kinsey v. Kinston,* 145 N.C. 106, 58 S.E. 912. See also McQuillin, Municipal Corporations, 3rd Ed., Vol. 19, Sec. 54-42, pp. 148 to 150."

The defendant was not an insurer of the safety of travelers upon Brice Street. *Watkins v. Raleigh,* 214 N.C. 644, 200 S.E. 424; *Houston v. Monroe,* 213 N.C. 788, 197 S.E. 571. The defendant contractor was under a legal duty to exercise ordinary care, *i.e.,* care commensurate with the surrounding dangers and circumstances, to warn travelers of the existence of the open ditch, and otherwise to protect them against injury therefrom. *Evans v. Construction Co.,* 194 N.C. 31, 138 S.E. 411; *Ramsbottom v. Railroad,* 138 N.C. 38, 50 S.E. 448; 25 Am. Jur., Highways, Sec. 400, pp. 697 and 698.

Considering the evidence in the light most favorable to the plaintiff we are of the opinion that the evidence is sufficient to go to the jury upon an issue as to whether the plaintiff was injured by the negligence of the defendant as alleged.

The next question presented by this appeal is whether the plaintiff was guilty of contributory negligence as a matter of law, which was the decision of the trial court.

The plaintiff knew the open ditch with pipes and dirt and rocks from its excavation was there when he walked down Brice Street to enter the Bynum home. But this knowledge does not *per se* establish negligence on his part. *Russell v. Monroe,* 116 N.C. 721, 21 S.E. 550; *Darden v. Plymouth,* 166 N.C. 492, 82 S.E. 829; *Tinsley v. Winston-Salem,* 192 N.C. 597, 135 S.E. 610.

The plaintiff made no effort to obtain a light and was feeling his way along with his feet to go the 25 feet from the Bynum driveway to the compressor wagon where the ditch ended. Does that and his other acts there that night make him guilty of contributory negligence as a matter of law? Our decisions seem to answer the question No. In *Beard v. R. R.,* 143 N.C. 137, 55 S.E. 505, the plaintiff, a railroad conductor, was going with a lighted lantern from the freight office to take charge of his train, the night was dark and stormy and the wind blew his lantern out. He did not return to light it, but continued along the platform, feeling his way with his feet, and fell down the steps which were cut in the platform about three feet, which he knew were there. There was no light on the platform, nor railing around the steps. Upon these facts the defendant contended that the plaintiff was guilty of contributory negligence as a question of law. This Court said on that question: "In passing upon this question his Honor was compelled to take into consideration

the whole evidence and fix the standard of duty, applying the legal test of prudence. It cannot, we think, be said that, using his senses, members, and knowledge of surrounding conditions, as described by plaintiff, he was manifestly regardless of his safety. Common observation teaches us that many persons, clearly within the pale of ordinary prudence, feel their way along steps in the dark. We can hardly think that by doing so they can be said to be clearly and obviously negligent. While it may have been wise for the plaintiff to return and relight his lantern, yet, in view of the fact that the train of which he was ordered to take charge was ready to move, and the time for its departure had arrived, that it was late at night and that the same wind which blew out his lantern would probably do so again, we think that he was entitled to have his conduct, in this respect, submitted to the jury."

In *Darden v. Plymouth,* 166 N.C. 492, 82 S.E. 829, this is a fair summary of the evidence. For more than two months the defendant had permitted building material to obstruct the sidewalks on both sides of the street. The plaintiff was injured by stumbling and falling upon some loose brick or building material rendering the sidewalk uneven, as she was going to her home at night. The obstruction would not permit two persons to pass abreast of each other. The obstruction was in a shadow cast by a street light from a shed that extended across the sidewalk. The plaintiff said that she was mindful of the pile of lumber, and was doing what she could to avoid being hurt. This court said in that case: "According to *feme* plaintiff's account, she was going from her work place to her home, along the street that was provided; that she was mindful of the lumber pile and the conditions attendant and was doing what she could to avoid a fall, but the place was rendered too dark to observe fully by the shadow of the building and the shed overhead, and notwithstanding her care, she slipped and fell. Upon these facts, if established, we must hold, as stated, that the question of contributory negligence on the part of plaintiff must be referred to the jury."

In *Tinsley v. Winston-Salem,* 192 N.C. 597, 135 S.E. 610; *S. c.,* 194 N.C. 808, 140 S.E. 192, the city had dug ditches for drainage or sewer pipes in the street and sidewalk in front of the residence of the plaintiff. The open ditches in the streets were safeguarded at night, but not the one across the sidewalk. The plaintiff for fifteen or twenty years had used a sidewalk or pathway there in going from and to her home. She used it every day; it was the only one she had. The path at this place was narrow. In the street about thirty feet from the ditch nearest the plaintiff's home was a small electric light, the rays of which were obstructed by a shade tree. There was no light on the sidewalk at this place, nor other warning. The plaintiff knew the ditch was there. About ten o'clock at night the plaintiff fell into the ditch, and was injured. There

was evidence in contradiction—evidence that the plaintiff's injury was caused solely by her own negligence. This Court held that a nonsuit was error, and that the case must be left to the decision of a jury.

*Boswell v. Town of Tabor,* 196 N.C. 196, 145 S.E. 17, is a similar case. The chief of police of the town with some men moved a house against the plaintiff's bakery shop to make room for paving sidewalks. A sill used in moving the house was left projecting and resting upon the back step of plaintiff's shop. The plaintiff saw the house moved, saw the sill left there, and used the steps by stumbling over the sill. She made no complaint. Four days after the sill had been left there the plaintiff after dark having forgotten the sill, was injured by catching her toe thereon as she was going out the steps. There was no light to see by. In paving the street the front steps had been taken down, and the only ingress and egress was a side door. Issues of negligence, contributory negligence and damages were submitted to the jury, and all answered in favor of the plaintiff. No evidence was offered by the defendant. On appeal to this Court the defendant contended that the plaintiff should have been nonsuited. This Court said: "From a careful reading of the testimony, as appears in the record, we cannot hold that the court below was in error. The case is analogous to *Tinsley v. City of Winston-Salem,* 192 N.C. 597."

In *Walker v. Reidsville,* 96 N.C. 382, 2 S.E. 74, a case relied upon by the defendant, the town dug a deep and wide pit between West Market Street and the east front of the town hall and market house. The edge of the pit next to the market house was 15 feet from the front of this building; the edge of it next to the street mentioned was 56 feet from the sidewalk of the street next to it. The plaintiff knew of the pit and where it was. There was ample room for him to pass out of the market house without going near the edge of the pit, and he did not pass out through the door he usually passed through in going to and from his business. In going home to supper he made his way through a crowd of persons in the aisle of the building to the front door on the east, facing West Market Street. He walked on, not thinking where he was going, but looking down. He fell into the pit and was severely injured. The facts are clearly distinguishable, and a nonsuit was proper. Walker knew the dangerous character of the pit; where it was; and of the pass-way fifteen feet broad between it and the market house out of which he passed. He did not need to go near it at all—he went out of his usual way in doing so. "If two ways are open to a person to use, one safe and the other dangerous, the choice of the dangerous way, with knowledge of the danger, constitutes contributory negligence." *Dunnevant v. R. R.,* 167 N.C. 232, 83 S.E. 347; *Fulghum v. R. R.,* 158 N.C. 555, 74 S.E. 584; 29 Cyc. 520; *Whalen v. Gas Light Co.,* 45 N.E. 363; *Johnson v. Willcox,* 19 Atl. 939; *Groome v. Statesville,* 207 N.C. 538, 177 S.E. 638.

The defendant also relies on *Dunnevant v. R. R.,* 167 N.C. 232, 83 S.E. 347, in which a nonsuit was granted. The plaintiff was lawfully on a platform of the defendant, at night, with a lighted lantern near him which he had used in going there. The plaintiff had been to the station often in the daytime, and was familiar with the depot and its surroundings. The plaintiff started to leave the platform, but instead of going down the steps at the southwest corner nearest him, and across which his lantern was shining or taking his lantern with him, with full knowledge of the conditions, he went into the dark towards the steps at the southeast corner. He then went around on the platform east of the waiting room, a distance estimated from 1½ feet to several steps, and fell off the platform. The facts are different from the instant case, for Dunnevant had two ways to use, one safe and the other dangerous, and chose the dangerous way with knowledge of the danger.

The defendant also relies upon *Groome v. Statesville,* 207 N.C. 538, 177 S.E. 638. The facts again are different from the instant case. The evidence tended to show that the plaintiff in recrossing a street at an intersection in a slightly diagonal course by the same route used by her in crossing the street a short time before, slipped on ice and snow along the gutter on the south side of the street and fell. There was evidence tending to show that the plaintiff could have avoided the ice and snow by crossing directly at the intersection, and the defendant pleaded her failure to have so avoided the hazard as contributory negligence. This Court ordering a new trial said: "We have examined the charge, and while it appears to be a correct statement of the law of contributory negligence . . . it does not, either in words or substance present to the jury the principle advanced by the instruction requested that a person to whom two courses of conduct are open, one dangerous and the other safe, is required to exercise due care in choosing which course to pursue." The *Groome* case was here again 208 N.C. 815, 182 S.E. 657.

We have carefully examined the other cases set forth in the defendant's brief, and they are distinguishable from the facts of the instant case.

In this case the conflicting contentions of the plaintiff and the defendant as to whether or not the plaintiff was guilty of contributory negligence as a matter of law arise from different interpretations of the evidence. It would seem that the contentions of both are supported by permissible inferences from the evidence, with neither compellable as a matter of law. These inferences are for the jury, not for the court. The right of trial by a jury dispassionate and indifferent is a priceless heritage handed down to us by our forefathers, and should be carefully guarded against infringement.

There is error, and the judgment of nonsuit must be set aside, and the case submitted to the jury.

Reversed.