MARGARET H. INGRAM, PLAINTIFF v. CORA T. LIBES, EXECUTRIX OF FRED A. LIBES, DEFENDANT.

(Filed 8 April, 1959.)

**1. Municipal Corporations § 14a—**

A contractor for the demolition of a building, who constructs a covered boardwalk adjacent to the sidewalk to provide temporary walkway for pedestrians during the progress of the work, is under substantially the same legal duty to pedestrians as the city would be in the construction of the temporary boardwalk and its ramps at either end.

**2. Same—**

Neither a municipality nor a contractor, constructing a temporary boardwalk adjacent to the sidewalk for use of pedestrians during the demolition of a building, is an insurer of the safety of the boardwalk and its ramps, but is under legal duty to exercise ordinary care in the construction and maintenance of the boardwalk and ramps, and to take reasonable precautions to prevent injuries to pedestrians using them in a proper manner and with due care.

**3. Negligence § 1—**

Reasonable care is that degree of care which a reasonably prudent man would exercise under the attendant facts and circumstances to prevent injury to others.

**4. Municipal Corporations § 14a—**

A contractor for the demolition of a building, who constructs a covered boardwalk with ramps at either end for the temporary use of pedestrians during the time the sidewalk is blocked incident to the work, is not negligent in failing to build a cover over the ramps to protect the ramps from snow and ice, nor does the construction of one of the ramps with a six inch fall in about two and one half feet render such ramp so steep as to constitute negligence or to require the construction of a handrail.

**5. Same— Evidence held insufficient to be submitted to jury on issue of negligence in causing fall of pedestrian on snow-covered ramp of temporary boardwalk.**

A contractor, demolishing a building and constructing a boardwalk with ramps at either end for the use of pedestrians during the time the sidewalk is blocked incident to the work, is not under duty to make the boardwalk and ramps no more dangerous than the sidewalk would have been, but is required only to use ordinary care in the construction and maintenance of the boardwalk and ramps, and where the evidence discloses that the ramp in question was not so steep as to make it dangerous, that it was covered with a rubber mat, and that several hours after a light snowfall a pedestrian slipped and fell on the ramp, although she saw that it was covered with about an inch of snow which had frozen over and was icy, nonsuit is proper, since the evidence discloses that her injuries were caused solely by the new fallen snow and ice, there being no evidence of negligence in the construction or maintenance of the boardwalk or ramps.

APPEAL by plaintiff from *Sharp, S.J.,* January Term 1959 of FORSYTH.

Civil action to recover damages for personal injuries allegedly caused by the actionable negligence of defendant's testator. Defendant, executrix, denies negligence, and pleads as a defense that if her testator were negligent, then plaintiff was guilty of contributory negligence.

From a judgment of involuntary nonsuit entered at the close of plaintiff's evidence, plaintiff appeals.

*Deal, Hutchins and Minor By: Roy L. Deal and Ed Pullen for
plaintiff, appellant.*

*Womble, Carlyle, Sandridge & Rice By: Charles F. Vance, Jr., for
defendant, appellee.*

PARKER, J.   Prior to 20 December 1955 Fred A. Libes, defendant's
testator, entered into a contract to demolish a brick building situate
at the southeast corner of Third and Liberty Streets in the City of
Winston-Salem. Before beginning the demolition Libes constructed a
covered boardwalk 40 or 42 feet long adjacent to the sidewalk by the
building to provide a temporary walkway for pedestrians, while the
demolition was being carried out. During December 1955 the side-
walks adjacent to the building were closed, and the public used the
boardwalk. The floor of the boardwalk was elevated about four inches
above the surface of the street. At each end of the boardwalk was a
wood ramp leading from the boardwalk to the street. The ramp at
the western end of the boardwalk was about two and one-half feet
wide, and about two to two and one-half feet long. It was long enough
for plaintiff to take several steps on it. This ramp began at the end
of the floor of the boardwalk, and had about a six-inch fall, due to an
incline in the street level. A rubber mat was nailed down flat over
the entire surface of this ramp. This ramp had no roof or covering
over it. It had no handrail.
   On 20 December 1955 there was a light snow in Winston-Salem
from 6:50 a. m. to 9:15 a. m. By 9:00 a. m. there was one inch of
snow on the ground. Streets were slippery from about 7:15 a. m. until
about 10:00 a. m. The snow began to melt between 9:30 a. m. and 10:30
a. m., and continued to melt, with only a trace on the ground at 1:15
p. m. Underfoot conditions in shady spots were icy until about 1:00
p. m. The temperature was below freezing that morning until after
10:30 a. m.
   On this morning plaintiff and her husband drove through the snow
from their home in the country to Winston-Salem on business. They
parked their car, and plaintiff went to the First Federal Building and
Loan Association. After completing her business there, she walked
westwardly along the sidewalk to the east end of the boardwalk con-
structed by Libes. Plaintiff was wearing shoes with medium height,
broad heels and plastic overshoes with corrugated soles. There was
no snow on the covered boardwalk. Plaintiff walked up the ramp at
the eastern end of the boardwalk, and walked along the boardwalk
to the ramp at the west end of the boardwalk. As she approached the
west ramp, she saw that the whole ramp was completely covered

with snow, which had frozen over and was icy. The crust of snow and ice there was at least an inch thick. Plaintiff testified on direct examination: "When I reached the western end of the walkway and started down the ramp, I was walking down very carefully, because I could see that it was slick, and I was taking very short steps, but my feet just went out from under me, both feet at the same time, and I sat down very hard and also landed on my left elbow." On cross-examination she testified: "I had no trouble seeing the ice and snow on the ramp there; I saw it very clearly before I started down. . . . As far as that ramp not being slick without snow and ice on it, a plank would not be slick if it is nothing on it to make it slick. I do not know whether or not the ramp had a rubber mat nailed over the top of it; it was covered with snow when I went down. . . . The ramp was covered with snow and ice, and I do not know whether there were any holes in it or not. I have testified that I do not know whether or not I had seen the ramp and the walkway before this; I did see it after this, and there were no holes or ridges in the ramp that I remember. The ice or snow was what I slipped on." Plaintiff suffered injuries in her fall.

Fred A. Libes constructed a covered boardwalk with a ramp at each end adjacent to a public sidewalk in Winston-Salem to provide a temporary walkway for pedestrians, while he was demolishing under contract a brick building adjacent to the sidewalk, and while the sidewalk was closed. Therefore, he was under substantially the same legal duty to pedestrians as the City of Winston-Salem would be, if it had been in direct charge of the demolition of the building for some purpose of its own. *Cook v. Winston-Salem*, 241 N.C. 422, 85 S.E. 2d 696; *Broadaway v. King-Hunter, Inc.*, 236 N.C. 673, 73 S.E. 2d 861; *Presley v. Allen & Co.*, 234 N.C. 181, 66 S.E. 2d 789; *Kinsey v. Kinston*, 145 N.C. 106, 58 S.E. 912. See also McQuillin, Mun. Corp., 3rd Ed., Vol. 19, Sec. 54.42.

Fred A. Libes was neither a guarantor nor an insurer of the safety of pedestrians using the boardwalk and ramps. Neither did he warrant that pedestrians using the boardwalk and ramps will be absolutely safe at all times. *Presley v. Allen & Co., supra; Watkins v. Raleigh*, 214 N.C. 644, 200 S.E. 424; *Houston v. Monroe*, 213 N.C. 788, 197 S.E. 571; *White v. New Bern*, 146 N.C. 447, 59 S.E. 992; *Fitzgerald v. Concord*, 140 N.C. 110, 52 S.E. 309; 25 Am. Jur., Highways, Sec. 373.

However, Fred A. Libes was under a legal duty to exercise ordinary care in the construction and maintenance of the boardwalk and ramps, and to take reasonable precautions to prevent injuries to pedestrians

using them in a proper manner and with due care. Reasonable care is the degree of care demanded by the facts and circumstances of the particular case. It is the ordinary care which a reasonably prudent man would use, considering all the circumstances of the case, in the discharge of a duty owing to another. *Welling v. Charlotte,* 241 N.C. 312, 85 S.E. 2d 379; *Broadaway v. King-Hunter, Inc., supra; Presley v. Allen & Co., supra; Watkins v. Raleigh, supra; Houston v. Monroe, supra; White v. New Bern, supra; Fitzgerald v. Concord, supra;* 25 Am. Jur., Highways, Sec. 543; 63 C.J.S., Municipal Corporations, Sec. 802.

Plaintiff contends that the defendant was negligent in not building a roof or covering over the ramps to protect them from snow and ice, in providing no handrail for the western ramp, and in constructing the ramp at the western end of the boardwalk with a steep fall of six inches from the end of the boardwalk to the street, so that the snow and ice on the western ramp made it more dangerous for pedestrians than the sidewalk would have been if the boardwalk had not been built, and the sidewalk closed.

One engaged in work on or demolishing buildings abutting on a sidewalk or street must use ordinary care to prevent injury therefrom to travelers on pain of liability for the resulting damage. *Johnson v. Huntington,* 80 W. Va. 178, 92 S.E. 344, 11 A.L.R. 1337. "The person doing such work is sometimes required by statute or ordinance to maintain a covered passageway in front of the building, or to take other specified precautions, for the protection of travelers on the adjacent street or walk, and non-compliance therewith renders such person liable for injuries which occurred by reason of such failure, or which would not have occurred had such duty been performed. Such a provision is intended to protect persons on the walk from substances falling from the building while work is in progress there, whether such substances fall directly from the face of the building or are hurled from inside it, at least during all hours while work on the building is in progress." 25 Am. Jur., Highways, p. 828. Plaintiff has not alleged the violation of any statute or ordinance requiring that the ramp be covered to protect it from snow and ice, neither has she cited in her brief any case holding that the ramp must be covered to protect it from snow and ice, nor have we found one. In our opinion, defendant was not negligent in not building a cover over the ramp to protect it from snow and ice.

This is said in 63 C.J.S., Municipal Corporations, Sec. 809: "The mere existence of a descent, slope, or step in the sidewalk does not render it (a municipal corporation) liable for accidents to persons in

stepping from one elevation to another, where the inequality or inclination is such that injury therefrom could not reasonably be anticipated." To the same effect see *Watkins v. Raleigh, supra; Murchison v. Apartments,* 245 N.C. 72, 95 S.E. 2d 133. Sidewalks and streets have slopes and inclines. There is evidence that the western ramp's entire surface had nailed on it a rubber mat, which was covered with snow and ice when plaintiff fell. The construction and the maintenance of the ramp at the western end of the boardwalk was not so steep or abrupt, nor so excessive or dangerous, as to constitute negligence, or require a handrail.

This is plaintiff's testimony as to what she saw when she reached the ramp at the western end of the boardwalk: "I had no trouble seeing the ice and snow on the ramp there; I saw it very clearly before I started down. . . . The ice or snow was what I slipped on." The ramp was not unsafe or dangerous in its original condition. It was made unsafe solely by the ice and snow.

In *Wesley v. City of Detroit,* 117 Mich. 658, 76 N.W. 104, the Court said: "All inclined sidewalks become dangerous for pedestrians when covered with ice. All the law requires is that the municipality shall keep them otherwise in a reasonably safe condition."

This Court said in *Browder v. Winston-Salem,* 231 N.C. 400, 57 S.E. 2d 318: "The mere slipperiness of a sidewalk occasioned by smooth or level ice or snow, formed by nature, is not sufficient to charge the municipality with liability for an injury resulting therefrom where the walk itself is properly constructed and there is no such accumulation of ice and snow as to constitute an obstruction."

"The mere fact that an accident results from the slippery condition of the walk, concurring with an ordinary slope therein, does not render the municipality liable for any resulting injuries." Annotation 41 A.L.R. 2d p. 745.

*Townsend v. City of Butte,* 41 Mont. 410, 109 Pac. 965, relied on by plaintiff, is distinguishable. In that case the city was held liable for injuries caused by its failure to remove from a sidewalk snow and ice which had accumulated and formed a smooth, slippery and slanting surface over which it was dangerous for pedestrians to travel, and which condition the city permitted to remain for an unreasonable time, to wit, many days before plaintiff's injury, after the city had actual knowledge of such condition.

The evidence shows no defect in the construction and maintenance of the western ramp. It had an ordinary slope. Whether the snow and ice on the western ramp made it more dangerous for pedestrians than the sidewalk would have been, if the boardwalk and ramps had not

been built and the sidewalk closed, is not the test of defendant's liability. The test is whether the defendant exercised ordinary care in the construction and maintenance of the western ramp and took reasonable precautions to prevent injuries to persons using it.

In *Nolan v. King,* 97 N.Y. 565, the defendant, with due authority from the municipal authorities, removed the sidewalk of a city street, and excavated for the purpose of constructing a vault. He built a bridge over the excavation, which in order to allow the work of construction to proceed was necessarily raised above the level of the street. The Court held that the defendant was not required to make the same as perfectly safe and convenient as was the sidewalk removed. His duty was to build it with care and prudence, such as will reasonably protect persons passing. The Court further held that it was error for the trial court to charge the jury that it was defendant's duty "to have the bridge constructed in such manner that the plaintiff would not be subjected to any more personal risk than if the sidewalk had been there instead of the bridge."

Plaintiff's injuries were caused solely by the new fallen snow and ice on the western ramp, which made it slippery. The judgment of involuntary nonsuit is

Affirmed.