WIGGINTON, Judge.
Appellants Anchor Hocking Glass Corporation and Lamar Bruce Bragg have appealed a final judgment based upon a jury verdict awarding damages to appellee Mae Bell Allen for the wrongful death of her husband caused by the negligence of the appellants. Anchor Hocking questions ■the sufficiency of the evidence to support the verdict which finds it guilty of negligence, while appellant Bragg questions the. sufficiency of the evidence to support the-verdict which finds that appellee was the-lawful wife of the decedent at the time of the latter’s wrongful death, and therefore-entitled to bring this action.
It is the theory of plaintiff’s case that at the time her husband was struck and', killed by the motor vehicle owned by Anchor Hocking, the braking systems on-the vehicle were defective and that this,, coupled with the negligent operation of the-vehicle by defendant Bragg with the implied consent of Anchor Hocking, proximately caused the injuries which resulted' in her husband’s death.
We shall first direct our attention to the grounds of the appeal urged by Anchor Hocking as cause for reversal of the judgment appealed. It contends that no evidence was adduced at the trial sufficient to> establish any act of negligence on its part,, but if such negligence was established,, then the evidence affirmatively reveals that as a matter of law such negligence was not the proximate cause of the decedent’s death.
Anchor Hocking’s motion for a directed! verdict at the conclusion of plaintiff’s evidence and at the close of all the evidence-was denied, as were its motions for judgment after verdict in accordance with its-motion for directed verdict, and for a new-trial.
At the outset, it must be noted? that the evidence adduced by the several' parties respecting the issues of negligence- and proximate cause was in sharp conflict. Under the settled law of this state, all conflicts in the evidence have been resolved, by the jury through the rendition of its verdict, which action has been approved by the trial judge in denying appellant’s motion for a new trial. For these reasons the judgment comes to this Court with a presumption of correctness, and the burden-rests upon appellants to clearly demonstrate-harmful error. In considering the questions *855 of whether the evidence is sufficient to support the verdict and judgment, it is basic that all evidence touching on the issues involved in the case, and all reasonable inferences which may lawfully be drawn therefrom, must be considered in a light most favorable to the prevailing party. It is with these time honored principles in mind that we approach our task of determining whether appellants have carried the burden of clearly demonstrating error.
From the record we find the following ■evidence which the jury had a right to believe and on which it based its verdict.
On and before the critical date involved in this case Maxwell House Coffee Company maintained a plant in the City of Jacksonville. The structure housing the •plant is surrounded by a paved area, all of which is enclosed with a fence having but one gate leading from the city street into the plant area. During working hours the paved area around the plant is normally -congested with trucks and other vehicles •entering and leaving the plant yard in the ■transaction of business with Maxwell House. The paved area adjacent to the •entrance gate slopes downward to the loading platform of the plant, which platform •is used for loading and unloading shipments consigned to and from the Maxwell House plant.
On and prior to the date in question Anchor Hocking Glass Corporation maintained its plant six miles distant from that -of Maxwell House and, among other things, was engaged in the business of supplying Maxwell House with glass jars. The demand for Anchor Hocking’s product was so consistently heavy that its tractor-trailer motor units operated daily on a shuttle basis 'between the two plants. Two spaces at the loading platform at the Maxwell House •plant were assigned to Anchor Flocking for its use in unloading the glass jars delivered by it. The remaining spaces were ■utilized by other suppliers and concerns •with whom Maxwell House transacted business. Anchor Hocking’s method of operation included the employment of a separate crew which was permanently stationed at the Maxwell House plant for the purpose of unloading the trailers of glass jars delivered to the plant. As each Anchor Hocking trailer was unloaded, it was promptly returned to the company’s plant and its place at the loading platform immediately filled by another Anchor Hocking trailer.
On the day in question one of Anchor Hocking’s tractor-trailer units operated by its driver, John W. Mullaly, arrived at the Maxwell House plant late in the afternoon with a load of glass jars. As this unit entered the gate to the plant yard Mullaly observed that the two spaces at the loading platform assigned to Anchor Hocking were occupied by other Anchor Hocking units which were in the process of being unloaded. Not being able at that moment to park his trailer at the loading platform, Mullaly stopped his unit partially inside of and completely blocking the gate leading into and out of the Maxwell House yard. He locked the trailer air brakes, set the mechanical hand brake and placed the truck in reverse gear. He then got out of the truck, leaving it unattended with the ignition keys in the switch, and proceeded to the loading platform where he visited among his friends. It was there that he located his brother, the driver of another truck being unloaded at the platform, with whom he proceeded to sit and visit. The evidence reveals that Mullaly had absented himself from his tractor-trailer unit for a period of approximately thirty minutes before the tragedy involved in this case occurred.
On and prior to the day in question appellant Lamar Bruce Bragg was employed by Henley & Beckwith, Inc., of Jacksonville, and was engaged in installing a vacuum pipeline in the Maxwell House plant. He completed his day’s work and proceeded to leave the Maxwell House yard in his one ton pickup truck, accompanied by his helper. As, Bragg left the area where his truck had been parked, he found the travel lane lead *856 ing to the exit gate blocked by a truck owned by a party not involved in this proceeding. The driver of the improperly parked truck was located and he moved his vehicle in order to let Bragg pass. The delay caused by this incident evidently upset Bragg and as he proceeded toward the exit gate, he came upon the parked Anchor Hocking tractor-trailer unit which completely blocked the only exit out of the plant yard. Becoming angered at the second delay caused by an improperly parked vehicle, Bragg profanely exclaimed that since the driver of the unit was not available, he would move it himself. The ownership of the tractor-trailer unit by Anchor Hocking was clearly evident by the company name appearing on the side of the trailer. As he got out of his own truck preparatory to moving the Anchor Hocking unit, Bragg recognized-one Anderson whom he knew to be an Anchor Hocking employee and who at that time was at the loading platform unloading another Anchor Hocking trailer. Bragg asked Anderson to move the Anchor Hocking tractor-trailer unit out of the way so Bragg could leave the yard, and Anderson replied, “All you have to do is just let it roll down.” Bragg then entered the cab of the tractor, cranked the motor, and put it in gear in an attempt to move the unit forward. Instead of moving forward the tractor bounced up and down whereupon Anderson shouted to Bragg, “You don’t have to do that, cut the motor off. Just push it back in gear.” After Bragg switched off the ignition and stopped the motor, Anderson instructed him to push down the lever attached to the steering column and the truck would roll forward a sufficient distance to clear the exit gate. At that time some unidentified third party interjected that the lever should be pulled upward instead of pushed downward, and Anderson agreed. Bragg pulled the lever upward and the tractor-trailer unit began to move forward down the gradually sloping incline toward the loading platform located just fifteen to twenty yards away. As the rolling unit began to increase its momentum Bragg applied the foot brake and even though the pedal depressed to the floorboard the forward speed of the rolling vehicle was not impeded. Realizing that the foot brake did not work Bragg shouted, “Look out, no-brakes,” and immediately seized the emergency brake lever and brought it all the way back against the seat. This second braking' system likewise failed to operate and the unit continued to roll forward. At that moment the deceased, Herbert Allen, an-employee of a concern not involved in this-proceeding, was standing beside a truck which was parked adjacent to the loading, platform with his back toward the Anchor Hocking unit. Because of Bragg’s inability to stop the Anchor Hocking unit, it continued to roll forward, striking Allen and crushing him between it and the truck, parked at the platform.
It is reasonably clear from the evidence that although Bragg was accustomed to operating trucks of the small pickup type and had in the past operated larger tractor and trailer units, he had never operated a. unit of the type owned by Anchor Hocking- and involved in this case. From the testimony it is apparent that Bragg was not familiar with the Anchor Hocking tractor and was not qualified to operate it.
In his testimony before the court Anchor Hocking’s truck driver, John W. Mullaly,. stated that the reason he left the ignition-, key in the switch of his tractor-trailer at the time he parked it in the entrance gate-to the Maxwell House yard was because he-was aware that he was blocking the gate- and he realized his unit might be in someone else’s way. He testified that it was. normal procedure to leave the ignition key in the switch under such circumstances.
On the issue of negligence the question arises as to whether the evidence above detailed, and the inferences which may reasonably be drawn therefrom, is sufficient to establish in the mind of a reasonable man that Anchor Hocking knew or should have known that the braking systems on its tractor-trailer unit were defec *857 tive and incapable of efficiently performing their proper function. If so, is the evidence reasonably susceptible of the inference that under the circumstances above detailed, Bragg attempted to operate the Anchor Hocking unit with the latter’s express or implied consent, and because of his unfamiliarity with it negligently operated the unit in a manner which proximately resulted in the death of plaintiff’s decedent. It is our conclusion that both of the foregoing questions must be answered in the affirmative.
The statute of this state relating to braking equipment required on motor vehicles operated upon the streets and highways of Florida requires that each such vehicle be equipped with two separate braking systems, each of which shall be effective to apply the brakes to at least two wheels, and to control the movement of and stop and hold such vehicles.[1] Violation of this statute is a crime and is prima facie evidence of negligence.[2]
Appellant introduced expert testimony tending to show that the braking equipment on the trailer was in good working order at the time of the incident involved in this case. Conceding such testimony to be credible and unimpeached, it related only to the trailer and not to the tractor itself. Appellant introduced at the trial the testimony of its driver, Mullaly, and another to show that the braking systems on the tractor were properly working both before and after the accident. Appellant contends that this testimony is conclusive and that the jury was not justified in believing Bragg’s false testimony when he said he attempted to stop the vehicle by applying both the foot brake and the emergency hand brake, but neither of them functioned. If appellant’s theory had been accepted by the jury, it would have been forced to conclude that Bragg was either a maniac or a cold-blooded murderer, for this would have been the case had he started the unit forward down the incline toward Allen and the parked truck at the platform and failed to apply any of the braking systems available to him to stop the vehicle as appellant contended he did.
Anchor Hocking’s driver, Mullaly, in parking his unit in such manner as to block the exit gate to the Maxwell House yard was aware of the significance of his act and in accordance with what he termed standard procedure left the ignition key in the switch, thereafter absenting himself from his unit for a period of some thirty minutes. He knew that the yard was congested with other motor vehicles which at that time of day would be entering and leaving the yard at frequent intervals. We believe the jury was justified in inferring from Mullaly’s testimony that he left the ignition keys in the switch of his tractor for the specific purpose of permitting it to be moved out of the gateway by anyone having occasion to either enter or leave the plant yard. Such action was an implied invitation to Bragg, or anyone else similarly situated, to do exactly as Bragg did in attempting to clear the exit so he could leave the yard for the night. Anchor Hocking insists that although the evidence may be susceptible of the inference that it impliedly consented for its unit to be moved by someone other than its driver, the jury was precluded from finding that such consent extended to one as unqualified as Bragg. With this contention we cannot agree. Although Anchor Hocking could safely assume that someone might attempt to move *858 the unit during Mullaly’s absence, it had no right to assume that such a person would necessarily be a qualified operator of that type unit.
Anchor Hocking’s next contention is that even though its driver left the ignition keys in the switch of the tractor during his absence, this act was not the proximate cause of decedent’s death, but that the proximate cause was the negligence of Bragg for which it is not liable. In support of this position Anchor Hocking invites our attention to the Lingefelt case decided by the Third District Court of Appeal,[3] and the Bryant case decided by the Second District Court of Appeal.[4] In each of the cited cases the owner of a motor vehicle left it parked on a city street unattended with the ignition key in the switch. In each case the vehicle was stolen by a thief who operated it in such manner as to damage a third person. In suits by the injured plaintiffs against the owners of the vehicles it was held in each case that although the owner’s act in leaving the ignition key in the switch may be held to be an act of negligence, nevertheless this act was not the proximate cause of the damages suffered by the plaintiff, the proximate cause being the negligent operation of the vehicle by the thief. Obviously, the Lingefelt and Bryant cases are not applicable to the facts in the case sub judice. In each of those cases the vehicle was operated by a person without the express or implied consent of the owner. In the case now reviewed the jury was justified in inferring that Anchor Hocking either expressly or impliedly consented for its vehicle to be operated by Bragg, or some person similarly situated, under the circumstances shown by this record. Such facts bring this case more in line with the decision rendered by this Court in the Smith case.[5] In that case we held that the act of a truck driver in leaving his truck with the ignition key in the switch under circumstances where he had reason to believe that an unqualified minor companion' driving with him might attempt to start the-truck and operate it during his absence presented an issue of negligence which could' be resolved only by the jury, and which-precluded the entry of summary judgment-in favor of the truck owner.
In the recent case of Beikirch v. City of Jacksonville Beach[6] this Court cited with approval the decision rendered by the Third District Court of Appeal in the Holmes-case [7] in which it is held:
“Negligence cases are extremely troublesome due to the varied fact situations which they present. It has-been held that where the case is extremely close on the question of negligence or contributory negligence, ‘doubt * * * should always be resolved in favor of a jury trial.’ ”
In commenting upon the above holding; this Court said in the Beikirch case:
“A third rule that is useful in determining the merits of the present appeal-is that adverted to in the above quotation from the Holmes case — that when the question of negligence or contributory negligence is extremely close, doubt should always be resolved in favor of a jury trial.”
It is our conclusion that the evidence adduced on the trial of this cause was sufficient, when believed by the jury, to establish that it was Anchor Hocking’s act of negligence which proximately caused the death of plaintiff’s decedent. Under the-circumstances the trial court was eminently- *859 «correct in denying appellant’s motions for ■directed verdict and for new trial.
We have carefully considered the point raised by appellant Lamar Bruce Bragg on rthis appeal, but find it to be without substantial merit.
The judgment appealed is accordingly affirmed.
CARROLL, DONALD K., J., concurs.
STURGIS, C. J., dissents.

. “Every motor vehicle, other than a motorcycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of, and to stop and hold, such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.’’ F.S. § 317.61(11, F.S.A.

. Gudath v. Culp Lumber Company, (Fla. 1955) 81 So.2d 742, 53 A.L.R.2d 846. Clark v. Sumner, (Fla.1954) 72 So.2d 375.

. Lingefelt v. Hanner, (Ma.App.1960) 125 So.2d 325.

. Bryant v. Atlantic Car Rental, Inc., (Ma.App.1961) 127 So.2d 910.

. Smith, v. City Products Corporation, (Fla.App.1962) 147 So.2d 590.

. Beikirch et al. v. City of Jacksonville Beach (Fla.App.1964) 159 So.2d 898.

. Holmes v. Porty-Five Twenty-Five, Inc., (Fla.App.1901) 133 So.2d 651.