WADE HAMPTON PINYAN v. HENRY CLAY SETTLE.

(Filed 29 January, 1965.)

**1. Negligence § 7—**

Only negligence which proximately causes or contributes to an injury has legal importance, and foreseeability is a requisite of proximate cause.

**2. Negligence § 1—**

Negligence is the failure to exercise that degree of care for others' safety which an ordinarily prudent man, under like circumstances, would exercise, the standard of care being constant but the degree of care varying with the attendant circumstances in proportion to the imminence of peril.

**3. Evidence § 3—**

It is a matter of common knowledge that a boy of average size between two and three years old is filled with activity and is likely to experiment with the operation of any mechanism which he can set in motion, and must be constantly watched to prevent injury to himself or others.

**4. Trial § 21—**

On motion to nonsuit, plaintiff's evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference therefrom, and defendant's testimony will also be considered insofar as it is favorable to plaintiff.

**5. Automobiles § 41q— Evidence of negligence in leaving small boy in car with key in switch held for jury.**

The evidence favorable to plaintiff tended to show that defendant left his car standing at a gasoline filling station with its rear only a few feet from the rear of another car being serviced by plaintiff, that defendant left the car in reverse gear with the key in the switch and his two and one-half year old son in the car, and that the child turned the switch causing the car to move backwards, injuring plaintiff, who was standing between the two vehicles. *Held:* Defendant should have anticipated that the child would likely experiment with the mechanism, that the car would move backward if the child turned the ignition key, and that under the circumstances such action would likely result in injury or damage, and therefore defendant's motion to nonsuit was correctly denied.

**6. Same—**

Evidence that defendant left a two and one-half year old child alone in a vehicle is sufficient to support an allegation that he left the vehicle unattended, since unattended means leaving it without anyone present who is competent to prevent any of the probable dangers to the public.

**7. Trial § 33—**

An instruction which states the allegations and the evidence and the contentions of the parties, together with a general charge on the applicable law, but which fails to apply the law to the various factual situations adduced by the evidence, does not comply with G.S. 1-180.

APPEAL by defendant from *Shaw, J.,* 30 March 1964 Civil Session of GUILFORD — Greensboro Division.

Civil action to recover damages for personal injuries allegedly caused by defendant's actionable negligence.

From a judgment, entered in accordance with the verdict, that plaintiff recover from defendant the sum of $7,000, he appeals.

*Jordan, Wright, Henson & Nichols by Welch Jordan for defendant appellant.*

*Frazier & Frazier by H. Vernon Hart for plaintiff appellee.*

PARKER, J. Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit entered at the close of all the evidence. Plaintiff's evidence, and the allegations of fact in his complaint, which the answer admits to be true, and defendant's testimony favorable to plaintiff (*Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307), show the following facts:

In April 1961, Kyle's Amoco Service Station in the city of Greensboro had two retail gasoline pump islands in front of the station building. These islands run in a north-south direction, with one island in line with and south of the other, and on each island are four gasoline pumps. The area around the pump islands and in front of the service station is surfaced with green concrete and asphalt.

About 1:30 p.m. on 29 April 1961, G. V. McNeill's car was standing at the north end of the south island on the west being serviced. Wade Hampton Pinyan, an employee of Kyle's Amoco Service Station, had put gasoline in the McNeill car, had serviced its four tires, and was at the back of the car with the trunk open servicing the spare tire. At this time, Henry Clay Settle drove a 1960 Chevrolet car onto the premises of the service station and south of the south gasoline pump on its west side, stopped his car, backed it up to within about a yard of the rear end of the McNeill car, and stopped. His car had a gear shift and clutch and a foot brake on the left side. He turned off the ignition switch leaving his car in reverse gear. On the front seat with him in his car was his son Winfree, a boy two years and seven months old, who was an average size boy for his age, and weighed about 35 pounds.

When Pinyan released the air hose with which he was putting air in the spare tire so it would wind back up on its reel, he noticed the rear of the Settle car about three feet from the back of the McNeill car. The door was open, and both of Settle's feet were sticking out of the door. Pinyan turned, and went back to put the valve cap on the spare tire inside the trunk, and while in this position the Settle car moved back crushing him between the bumpers of the two cars.

G. V. McNeill testified in substance: He saw Settle get out of the car and head towards Mr. Kyle's office. He does not know whether he went in the office. At that time he did not observe anyone in the Settle car. He was standing beside his car which was being serviced. When the Settle car moved back and mashed Pinyan between its rear bumper and the rear bumper of his car, he looked around and saw Settle's head and shoulders in his car. That was all he could see because he was on the opposite side. After Pinyan was hurt, he heard Settle say that his child had started his car, turned the ignition on or something — in other words, had caused the car to move, that his child had never done that before.

Kyle Henry Harris, operator of the service station, was servicing a car on the side of the south pump island opposite from the McNeill and Settle cars. He testified in substance: Settle backed up his car and stopped with its rear end about three feet or more from the back of McNeill's car. Settle told him to fill up his car when he got time. At that time Settle had his car door open. He heard Pinyan scream, and saw Settle drive his car forward. He testified: "The motor in Mr. Settle's car started up. I could hear the motor start up. It choked itself down."

Norman Reed Gordon, a policeman in Greensboro, arrived at the scene some twenty to twenty-five minutes after Pinyan was injured. In the course of his investigation he talked with Settle. He testified: "Mr. Settle stated that his vehicle was parked in reverse gear, that his two-year-old son reached over, and turned the ignition switch on, and caused the vehicle to crank up and run backwards, and pinned the legs of Mr. Pinyan between the two vehicles." On cross-examination Gordon stated that in his original notes he wrote that the Settle car had the emergency brake about half up.

Defendant Henry Clay Settle, testifying in his own behalf, said in substance, except when quoted: He backed his car to within about five feet of the rear of the McNeill car. He stopped with his car in reverse, shut the motor off, and pushed his foot brake all the way down. An attendant at the filling station came up and said he would be with him in a minute. He turned to his left, pulled his door open, and said: "It's quite all right." He shut his door, and was sitting in his car, and all at once his car started lurching backwards. It was lurching back by the force of the battery. The motor was turning over, but it never completely fired. He testified: "My son held the key, and at that particular moment, I didn't even realize that the car was lurching back in this manner. Since it was receiving no gas, the car never one time completely caught on. It was lurching back by the battery. The motor was turning over, just by force of the battery alone. * * * I looked down and saw Winfree's hand on there and just with one swipe, I slapped, and he, hand and all, went right in the seat." He put the car in gear, released his brake, and pulled out a distance of about twenty yards from the pump. He testified: "If the hand brake or parking brake was set in the manner that I have described, this particular car will move backwards when the ignition switch was held on. It would move backwards with the foot brake set." When he was home on week ends, Winfree frequently rode with him in the car. He had two cars. Winfree

rode frequently with his mother. He did not get out of his car and go into the filling station as McNeill testified. Winfree had never done anything like that before.

The complaint alleges four acts of negligence on the part of defendant: (1) He stopped his car, got out and left it unattended without engaging the emergency brake; (2) he left the car in reverse gear well knowing or should have foreseen that should the car be started while in gear, it would move without warning and could injure someone or cause damage; (3) he left his infant son in the car unattended when he could foresee or should have foreseen that a small child could play with the ignition key and switch and start the car as his son did; and (4) he left his car unattended without first removing the ignition key to prevent the car being started.

It is a fundamental principle of law that the only negligence of legal importance is negligence which proximately causes or contributes to the injury under judicial investigation. *McNair v. Richardson,* 244 N.C. 65, 92 S.E. 2d 459.

In *Osborne v. Coal Co.,* 207 N.C. 545, 177 S.E. 796, the Court said: "Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." It is well settled by our decisions that foreseeability of injury is a requisite of proximate cause. *Pittman v. Swanson,* 255 N.C. 681, 122 S.E. 2d 814; *McNair v. Richardson, supra.*

It is hornbook law that negligence is the failure to exercise that degree of care for others' safety, which an ordinarily prudent man, under like circumstances, would exercise. *Jackson v. Stancil,* 253 N.C. 291, 116 S.E. 2d 817; *Ingram v. Libes,* 250 N.C. 65, 107 S.E. 2d 920; *Moore v. Iron Works,* 183 N.C. 438, 111 S.E. 776. The invariable standard of care is constant, but the degree — that is the quantity — of care necessary to measure up to the invariable standard is as variable as the attendant circumstances. *Sparks v. Phipps,* 255 N.C. 657, 122 S.E. 2d 496; *Rea v. Simowitz,* 225 N.C. 575, 35 S.E. 2d 871; 162 A.L.R. 999.

In *Rea v. Simowitz,* the Court said: "But a prudent man increases his watchfulness as the possibility of danger mounts. So then the degree of care required of one whose breach of duty is very likely to result in serious harm is greater than when the effect of such breach is not nearly so great. * * * And whether defendant exercised or failed to exercise ordinary care as understood and defined in our law of negligence is to be judged by the jury in the light of the attendant facts and circumstances."

*Campbell v. Laundry Co.,* 190 N.C. 649, 130 S.E. 638, was an action to recover damages for the alleged wrongful death of a four-year-old

child. In its opinion the Court said: "A child of this tender age merely indulges the natural instincts of a child and amuses himself with an empty car, a deserted horse, an automobile or an electric truck, or whatever may be in his sight. In so doing he is not negligent." It is a matter of common knowledge that a boy two years and seven months old, average size for his age and weighing about 35 pounds, is filled with activity and explores the strange, new, and fascinating world around him, and is "likely to experiment with the operation of any mechanism which can be set in motion" (*Kennedy v. Hedberg,* 159 Minn. 76, 80, 198 N.W. 302, 304), and must be constantly watched to keep him not only out of mischief, but to prevent him from injuring himself.

The case of *Barbanes v. Brown,* 110 N.J.L. 6, 163 A. 148, is helpful. This was an action to recover for damages to plaintiff's car done by the defendant's automobile. The trial judge, sitting without a jury, found for the plaintiff, and the defendant appealed from the judgment. The facts are these: Defendant parked his automobile on a public street, where there was considerable grade, facing up the hill, with the front wheel "pitched" against the curbstone, applied the emergency brake, "put the car in one of four forward speeds," and "turned the motor off," and then left. When he departed, he left two small mischievous and irresponsible children, whom he had with him, in the car. These two children, seated on the front seat, played and meddled with the machinery, and jumped out before the car started to roll backwards down the hill and damaged plaintiff's automobile. The Court in its opinion stated:

> "Of course, the unexplained presence upon a public highway of a 'runaway' automobile, without driver or occupant, running down grade along and across the street and colliding with and damaging another automobile lawfully there, raises a *prima facie* presumption of negligence upon the part of the owner of the runaway automobile. [Citing authority.]
>
> "The sole question presented and argued is whether at the close of the case the evidence adduced was of such a character as to overcome the proof and presumption of defendant's negligence, and to require the court, sitting as a jury, to find for the defendant."

The Court, after stating that it thought it was open to the judge, sitting without a jury, to find that the presumption of negligence arising from the plaintiff's proof had not been overcome, and that the defendant's negligence was the proximate cause of the injury to the plaintiff's car, said:

"As we have pointed out, he [defendant] left the car facing up the hill with the front wheel against the curbstone. It rolled down the hill backwards. The evidence tended to show that he left two small mischievous children on the front seat; that these children were without capacity to estimate or appreciate the danger of meddling with the machinery of the car, and of course it might well be inferred that, in the exercise of reasonable care, the defendant should have anticipated the ordinary behavior of children in such circumstances. It was open to the judge, sitting without a jury, to find that he knew, or should have known, that the circumstances were such as to suggest the necessity of care against possible or probable interference by the children with the machinery of the car, which, if released, would result in its rolling down the hill, considering the way it was parked. In short, the evidence, considered as a whole, amply justified the conclusion that the defendant failed to exercise reasonable care, and that such negligence was the proximate cause of the injury to the plaintiff's car.

"A jury question having been presented on the essentials of the liability of the defendant, the judgment must be affirmed, with costs."

Considering plaintiff's evidence in the light most favorable to him, and giving him the benefit of every reasonable inference to be drawn therefrom (*Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492), and considering so much of defendant's testimony as is favorable to plaintiff (*Bundy v. Powell, supra*), as we are required to do in passing on a motion for judgment of compulsory nonsuit, we think a jury could find the following facts and draw the following reasonable inferences from the evidence:

About 1:30 p.m. on 29 April 1961 defendant drove a car on the premises of Kyle's Amoco Service Station for the purpose of purchasing gas, and stopped it near a gasoline pump with its rear end within about a yard of the rear end of McNeill's car. At that time plaintiff was standing at the rear end of the McNeill car with the trunk door up servicing the spare tire in the trunk. Defendant saw, or in the exercise of ordinary care he could have seen, plaintiff standing between the rear bumpers of the two cars servicing McNeill's spare tire. He left his car in reverse gear, turned off the ignition switch, left the key in the ignition switch, and pushed his foot brake all the way down. He knew his car would move backwards when the ignition switch was held on with its foot brake all the way down. In the front seat with him was his son Winfree, two years and seven months old, an average size boy for his age, weighing about 35 pounds. He knew Winfree had ridden in cars

frequently with him and with his mother, and a legitimate inference is that he had seen them turn on the switch key and start the motor. Defendant then got out of the car, leaving Winfree in the front seat, and headed towards Mr. Kyle's office. A legitimate inference is that he, in the exercise of reasonable care, should have anticipated the ordinary behavior of a small boy in such circumstances to meddle with the machinery of the car and that under all the attendant circumstances he failed to exercise that degree of care for plaintiff's safety, which an ordinarily prudent man, under like circumstances, would exercise, and was guilty of negligence. The jury could further find from the evidence that he, in the exercise of the ordinary care of an ordinarily prudent man, should have reasonably foreseen that Winfree, alone in the automobile, without capacity to estimate or appreciate the danger of turning the ignition key on in the ignition switch and setting the car in motion backwards, was likely to experiment or meddle with the operation of the key in the ignition switch, which would set the car in motion, thereby causing the car to lurch or move backwards, and that if Winfree did, consequences of an injurious nature to plaintiff would ensue. That Winfree did turn on the key in the ignition switch, the motor started up, and the car lurched or moved backwards, crushing plaintiff between the rear bumpers of the two cars, and that defendant got back to the car, and had his head and shoulders in the car when plaintiff was crushed or being crushed. That defendant's negligence played a substantial part in plaintiff's injury, and was the proximate cause thereof.

Defendant contends there is a fatal variance between *allegata et probata,* because there is no evidence defendant left his car unattended. This contention is not tenable. McNeill's testimony is that defendant, when he stopped his car about a yard from his (McNeill's) car, got out and headed towards Mr. Kyle's office. At that time Winfree was alone in the car. The State of Maryland in 1949 had a statute prohibiting a person from leaving a motor vehicle unattended without removing the ignition keys. Code Supp. 1947, art. 66½, § 192 (now Md. Code Anno. 1957, art. 66½, § 247). In *Lustbader v. Traders Delivery Co.,* 193 Md. 433, 67 A. 2d 237 (1949), the Court said: "The statute does not define 'unattended,' but a reasonable interpretation is that it means without any one present who is competent to prevent any of the probable dangers to the public." We think this definition is sound, we adopt it, and McNeill's testimony would permit a jury's finding that defendant left his car unattended. There is no fatal variance between *allegata et probata.*

Defendant relies upon *Williams v. Mickens,* 247 N.C. 262, 100 S.E. 2d 511; *Herring v. Humphrey,* 254 N.C. 741, 119 S.E. 2d 913. The facts in the *Williams* case are easily distinguishable. In that case an owner

left the ignition key in the ignition lock of her car, and a thief stole it and had a wreck. In the *Herring* case the facts are quite different from the facts here. The defendant also relies on *Roberts v. Lundy,* 301 Mich. 726, 4 N.W. 2d 74. The facts in this case are factually different, in that when the driver of the car left the key in the ignition switch and got out to take two children to a rest room, the car was occupied by three adults and a boy.

The trial court correctly overruled defendant's motion for judgment of compulsory nonsuit, and submitted the case to the jury.

Defendant assigns as error that the judge in instructing the jury on the first issue of negligence failed to declare and explain the law arising on the evidence in the case as to all the substantial features of the case, and did not instruct the jury concerning what ultimate facts the jury would be required to find in order to determine that defendant was guilty of actionable negligence, and did not instruct the jury concerning what ultimate fact findings by it would require the jury to exonerate the defendant of negligence. This assignment of error is good. A reading of the charge shows that in respect to the negligence issue the court gave a summary of the allegations in the complaint and answer, a statement of the issues to be submitted to the jury, an elaborate statement of the evidence offered by the parties, placed the burden of proof of the first issue on the plaintiff, made a brief statement of the contentions of the parties, and then instructed the jury in effect that if the plaintiff had satisfied them by the greater weight of the evidence that the defendant was negligent in any of the respects alleged by the plaintiff and that the negligence of defendant was one of the proximate causes of the occurrence, then it would be their duty to answer the first issue yes, otherwise no. After the court had completed its charge and instructed the jury to retire, counsel for plaintiff called to the court's attention that by inadvertence it had failed to instruct the jury as to the elements of actionable negligence. Whereupon, the court gave the jury a general instruction as to negligence, foreseeability, and proximate cause. Such a charge does not comply with the mandatory requirements of G.S. 1-180. *Bulluck v. Long,* 256 N.C. 577, 124 S.E. 2d 716; *Glenn v. Raleigh,* 246 N.C. 469, 98 S.E. 2d 913; *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484.

For error in the charge defendant is entitled to a

New trial.