Donald L. TYNDALL

v.

UNITED STATES of America.

Lisa Michelle TYNDALL, a minor, by her General Guardian, Donald L. Tyndall

v.

UNITED STATES of America.

Kimberly Fay TYNDALL, a minor, by her General Guardian, Donald L. Tyndall

v.

UNITED STATES of America.

Donald L. TYNDALL, Administrator of Estate of Elizabeth M. Tyndall, Deceased,

v.

UNITED STATES of America.

Bruce Edward TYNDALL, a minor, by his General Guardian, Donald L. Tyndall

v.

UNITED STATES of America.

Civ. A. Nos. 1294–1298.

United States District Court
E. D. North Carolina,
Wilmington Division.

Jan. 15, 1969.

William S. McLean, Asst. U. S. Atty., Eastern District of North Carolina, Raleigh, N. C., for the United States.

Russell J. Lanier, Kenansville, N. C., and George Rountree, Jr., Rountree & Clark, Wilmington, N. C., and Henry L. Stevens, III, Kenansville, N. C., for plaintiffs.

## OPINION and JUDGMENT

DALTON, District Judge.

This action is based on 28 U.S.C.A. § 1346(b) and §§ 2671–2680, of the Federal Tort Claims Act. The government has moved for summary judgment upon the facts appearing in the pleadings, depositions, and stipulations filed with this court, claiming that as a matter of law the government is not liable to the plaintiff under the following circumstances, some of which appear indistinctly in the record.

About 10:30 p.m. on October 5, 1967, Donald L. Tyndall, his wife and their three children, the plaintiffs, were riding in their car on North Carolina Route #24. About one mile east of Beulaville, North Carolina, the plaintiffs' car collided with a two-ton truck driven by Private Robert H. Braathe, a member of the United States Marine Corps. The collision caused the death of Mrs. Tyndall and Private Braathe, and Donald

Tyndall and his three children were seriously injured. At the time of the accident Private Braathe was stationed at the Marine Corps Air Facility located near Jacksonville, North Carolina, about thirty miles from the scene of the accident. The truck was the property of the United States and had been assigned to the Marine Corps base. On the night in question, Private Braathe had been off duty since 4:30 p.m. and had been drinking heavily since early evening. About 8:00 p.m. while leaving his barracks with a nearly empty vodka bottle in his hand he met two other marines. During this encounter Private Braathe offered to wager that he could drive to Connecticut and back by the following morning. The other two men refused to accept the bet and went on their way. Private Braathe then went to the Supply Station, where he met Corporal Grunden, the duty clerk that night at the Supply Station. Corporal Grunden was leaving the building to make two deliveries in the ill-fated truck, and Private Braathe accompanied Corporal Grunden on these deliveries. After making the deliveries Corporal Grunden refueled the truck and parked it near the Supply Station, leaving the ignition key in the ignition switch. Corporal Grunden, however, does not recall leaving the key in the truck. In the course of their conversation that evening, Private Braathe mentioned to Corporal Grunden that he wanted to drive to Connecticut that night. According to Corporal Grunden, Braathe seemed to dismiss the idea when Grunden reminded him that his car would not make it that far. Corporal Grunden said that Braathe appeared to have been drinking, but did not appear to be intoxicated. The assistant duty clerk for that evening stated that Corporal Grunden took away from Private Braathe the keys to Braathe's personal car. After the accident Corporal Grunden disclosed to his superior, Sergeant A. L. Marr, that Pfc. Braathe consumed more than a quart of vodka on the night of the accident. At about 9:00 p.m. that night a Marine Corps sergeant encountered Pfc. Braathe as he was leaving his barracks with a vodka bottle in his hand. The sergeant asked Braathe where he was going, to which Braathe replied that he was going home. The sergeant asked Braathe how he was getting there and Braathe answered that he was going to get there by "government transportation," and would be back by Friday night. Shortly after this conversation Braathe went back to the Supply Station where he told Corporal Grunden that he was going to sleep in the truck because his clothes were laid out on his bunk for a morning inspection. Corporal Grunden let him go because "he was tired of messing with him."

Neither of the two sentries at the main gate saw Private Braathe or the truck leave the base. Between 10:00 p.m. and the time of the accident Pfc. Braathe was seen by three motorists as he attempted to pass them on highway #24. One car was forced off the road by the truck's failure to cross the center line in passing. Another traveling about 55 m.p.h. was struck in the rear taillight and knocked into a ditch as the truck attempted to pass. The driver of the third car had just passed the plaintiffs' car, which was coming from the opposite direction, when she heard the sound of brakes and a crash.

Other relevant facts brought forth by the government revealed that the truck which Private Braathe was driving had been permanently assigned to the Supply Department. While the prevailing orders were that the truck was to be returned to the motor pool each day, this was not always done. Private Braathe was a supply clerk and general warehouseman, whose duties included receipting material, stocking and assistance in deliveries. Only occasionally did Private Braathe's duties include driving the delivery trucks.

Marine Corps regulations and procedures for the use of the truck require special authorization by the Officer of the Day before Marine Corps vehicles

may be used for official off-station trips after 4:30 p.m. No such authorization was given on the night of October 5th. Corporal Grunden had no authority to authorize such trips. His duties as supply clerk are not entirely clear, but apparently, on the evening in question, they included responsibility for the "clean-up and security" of the Supply Station.

Marine Corps regulations also provided for the "security" of vehicles: "Unattended vehicles will be secured, engines locked and keys removed, and brakes will be effectively set." It would appear that this regulation was not followed on the night in question.

Upon these facts the plaintiffs, relying on the doctrine of *res ipsa loquitur*, insist that someone must have been negligent in permitting Private Braathe to operate the truck in his drunken condition. Plaintiffs argue further that the non-compliance with the Marine Corps regulation as to securing motor vehicles was analogous to violation of a safety statute, which in North Carolina would be negligence per se. Finally, plaintiffs argue that Corporal Grunden was negligent in making the truck available to Private Braathe which was a proximate cause of the accident, and that the government must be held responsible under the applicable rules of *respondeat superior*.

The government argues that under the North Carolina rules of *respondeat superior*, the United States Government, as a matter of law, cannot be held responsible for the plaintiffs' injuries. It is urged that Private Braathe, while clearly negligent, was on a frolic of his own at the time of the accident, and the negligence, if any, on the part of Corporal Grunden or others, was not the proximate cause of the accident.

█ We note at the outset that summary judgment is seldom an appro-

priate method by which federal courts should dispose of negligence cases since in the usual case material facts are in dispute. See 3 Barron and Holtzoff, Federal Practice and Procedure § 1232.1 (1956); 6 Moore's Federal Practice, ¶ 56.17 [42] at 2583 (2d Ed.1966). In White v. United States, 317 F.2d 13, 18 (4th Cir. 1963), a suit under the Federal Tort Claims Act, the applicable rule reiterated:

> * * * [summary judgment] should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. * * * And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.

See also Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir. 1951), cert. denied, 342 U.S. 887, 72 S.Ct. 178, 96 L. Ed. 666 (1951). Since juries are not available under the Tort Claims Act, 28 U.S.C.A. § 2402, summary judgment would seem to be particularly inappropriate when the question is whether particular acts constitute negligence. If one thing is clear from the evidence submitted by the government in support of its motion, it is that further inquiry into the facts would be helpful in determining their legal consequence. Hence, the government's motion is denied.

█ Since we conclude that under the above-quoted test, this case *might* present a "jury question," we deem it unnecessary at this time to consider plaintiffs' argument under North Carolina law [1] that the rule of *res ipsa loquitur* would give rise to a jury question. See White v. Hines, 182 N.C. 275, 109 S.E. 31 (1921).

██ Whether the government may be held liable for these plaintiffs' damages is determined by " * * * the law

---

1. The law of the state where the injury occurred governs the question of whether *res ipsa loquitur* is available under the facts of the case. 28 U.S.C.A. § 1346(b),

Baker v. United States, 226 F.Supp. 129 (D.C.Iowa 1964), aff'd, 343 F.2d 222 (8th Cir. 1965).

of the place where the [negligent] act or omission occurred." 28 U.S.C.A. § 1346(b). Where the action involves torts of servicemen, the government is responsible only if the tortious action of the serviceman occurred while he was "acting in line of duty." 28 U.S.C.A. § 2671. "Acting in the line of duty," however, merely invokes the state rules of *respondeat superior*. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); see 7 Wm. & Mary L.Rev., Current Decision, 413 (1966). The North Carolina rule of *respondeat superior* is familiar: The question is whether the tortious conduct of the servant occurred when he was acting in the scope of his employment. Riddle v. Whisnant, 220 N.C. 131, 16 S.E.2d 698 (1941); Chappell v. Dean, 258 N.C. 412, 128 S.E.2d 830 (1963).

That Private Braathe was on a frolic of his own at the time of the accident is clear beyond cavil. His use of the truck was unauthorized and for a personal mission. See Mider v. United States, 322 F.2d 193 (6th Cir. 1963); Riddle v. Whisnant, supra. However, the question as to Corporal Grunden's actions is not so clear.

 It would seem that Corporal Grunden was charged with responsibility for seeing that the Supply Station trucks were not purloined. Nevertheless he left the keys in the truck's ignition, inadvertently it seems, and took no precautions toward securing the truck, although he knew that Private Braathe intended to "sleep" in the truck. The fact that Corporal Grunden violated the Marine Corps regulation by not removing the ignition key from the truck is not sufficient to take his actions out of the course of his employment. See Duckworth v. Metcalf, 268 N.C. 340, 150 S.E. 2d 485 (1966). Likewise, even if Corporal Grunden acted contrary to Marine Corps regulations when he permitted Private Braathe to sleep in the truck, this does not appear to be an act which *ipso facto* removed Corporal Grunden from the line of his duties.

 The primary issue here is not whether Corporal Grunden was acting in this line of duty on the night of October 5th, but whether he was negligent. The North Carolina decisions define negligence as the failure to exercise that degree of care for others' safety which an ordinary prudent man under like circumstances would exercise. Jackson v. Stancil, 253 N.C. 291, 116 S.E.2d 817 (1960); Ingram v. Libes, 250 N.C. 65, 107 S.E.2d 920 (1959). The only negligence of legal importance is negligence which proximately causes or contributes to the injury. McNair v. Richardson, 244 N.C. 65, 92 S.E.2d 459 (1956). A requisite for a finding of proximate cause is the foreseeability of the injury. Pinyan v. Settle, 263 N.C. 578, 139 S.E.2d 863 (1965); Osborne v. Atlantic Ice & Coal Co., 207 N.C. 545, 177 S.E. 796 (1935). Whether the intervening act of a third person is itself the proximate cause of the injury and sufficient to excuse the defendant's lack of care again depends on foreseeability:

> The test is not to be found merely in the degree of negligence of the intervening agency, but in its character —whether it is of such an extraordinary nature as to be unforeseeable. * * * A person is bound to foresee only those consequences that naturally and probably flow from his negligence; but caution must be observed in the application of this principle also, since the failure to foresee the exact nature of the occurrence caused by his negligence will not excuse him if it could be reasonably foreseen that injury to some person might occur through an event of that character. [citations omitted].

Rattley v. Powell, 223 N.C. 134, 25 S.E. 2d 448, 450–451 (1943); see Henderson v. Powell, 221 N.C. 239, 19 S.E.2d 876 (1943). It follows that the negligence of more than one person may be a proximate cause of the injury, and a sufficient basis for imposing liability. Price v. Gray, 246 N.C. 162, 97 S.E.2d 844 (1957). While the intervening *criminal*

act of a third party is ordinarily sufficient to relieve the defendant of liability, Ward v. Southern Ry. Co., 206 N.C. 530, 174 S.E. 443, 444 (1934); Williams v. Mickens, 247 N.C. 262, 100 S.E.2d 511, 512 (1957), these cases also recognized that the foreseeability of the intervening criminal act is the test. And at least one North Carolina case has held that an intervening criminal act does not remove the question of the defendant's negligence from the province of the jury. Ross v. Atlantic Greyhound Corp., 223 N.C. 239, 25 S.E.2d 852 (1943).

In regard to the question of Corporal Grunden's negligence, counsel for the plaintiffs refer us to several North Carolina cases which hold, in effect, that where there is a casual relationship between the violation of a safety statute and an injury of the type which the statute was intended to prevent, the breach of the statute is negligence per se. See, e.g., Wolfe v. Independent Coach Line, Inc., 198 N.C. 140, 150 S.E. 876 (1929); Smith v. Goldsboro Iron & Metal Co., 257 N.C. 143, 125 S.E.2d 377 (1962). From this premise the plaintiffs argue that when Corporal Grunden left the keys in the truck in violation of the Marine Corps regulation, it was negligence per se, that the accident could not have happened but for this violation, and therefore the government is liable. This argument overlooks the fact that there is no statute in North Carolina prohibiting the leaving of keys in an unlocked car, see Williams v. Mickens, 247 N.C. 262, 100 S.E.2d 511 (1957), and even if there were, it would have no application to the Marine Corps base, see Herring v. Humphrey, 254 N.C. 741, 119 S.E.2d 913, 91 A.L.R.2d 1320 (1961).

A more appropriate analogy offered by plaintiffs is that the Marine Corps regulation is similar to a rule adopted by an employer to govern the conduct of his employees. Such rules are admissible as some evidence of negligence when their purpose is to protect a class of persons including the injured party, and when their violation can reasonably be said to have contributed to the injury. Renaldi v. New York, New Haven & Hartford R. Co., 230 F.2d 841, 59 A.L.R.2d 1371 (2nd Cir. 1956); see Barnes v. Norfolk Southern Ry. Co., 333 F.2d 192 (4th Cir. 1964). Reasoning similar to this seems to have been applied in three cases under the Federal Tort Claims Act which are of particular relevance here. In United States v. Shively, 345 F.2d 294 (5th Cir. 1965), cert. denied, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124, the Fifth Circuit approved of the lower court's finding that the issuance of a pistol to an off-duty soldier, contrary to Army regulations and without specific authorization, was negligence. The Court of Appeals disagreed with the district court, however, on the question of whether the negligent issuance of the pistol was a proximate cause of the shooting of the soldier's wife, and reversed the lower court's judgment for the plaintiff. This decision of the Fifth Circuit was based on the Georgia rule that where an intentional criminal act intervened between the defendant's negligence and the plaintiff's injury, the intervening criminal act is properly held to be the proximate cause. This basis of the Shively decision was used to distinguish that case from a decision by the same court based on similar facts but decided under Alabama law. In Underwood v. United States, 356 F.2d 92 (5th Cir. 1966), an airman with a history of mental illness was permitted access to a pistol, again contrary to existing regulations. The airman used the pistol to take his own life and that of the plaintiff, his former wife. The Fifth Circuit found negligence in two respects: returning the airman to duty without restrictions, and permitting him to draw a pistol. The basis for the second finding was that the Air Force restrictions were at least in part intended to prevent accidents and injuries to the public. "It stretches the credible to say that at least one reason for maintaining tight control of

firearms and ammunition was not the maintenance of safety. * * * they were for the benefit of the public." Underwood v. United States, 356 F.2d at 98–99. On the question of proximate cause, the Fifth Circuit noted that under Alabama law actionable negligence could be found where the intervening criminal act was foreseeable.

A third case is Williams v. United States, 352 F.2d 477, (5th Cir. 1965), wherein an Army sergeant, contrary to Army regulations, removed small explosive devices from the Army base. He had inadvertently neglected to return the "simulators" to the squad. Upon finding them in his pocket when he got home, he left them in a dresser drawer intending to return them. This he also forgot to do. Months later his wife gave one of the devices to a neighboring 13-year-old boy, the plaintiff, who was injured when the device blew up in his hand. In regard to the negligence of the sergeant the court said, "Smith knew simulators were dangerous; he knew the rule against taking them off the base. He should have realized that an obvious purpose for the rule was to keep dangerous instrumentalities out of the civilian community." Williams v. United States, 352 F.2d at 481. The Fifth Circuit reversed the district court and found the government liable in spite of the intervening negligent acts of his wife and the plaintiff.[2]

While an underlying purpose to protect the public may be divined where Armed Forces regulations deal with firearms or explosives, no such purpose is apparent where, as here, the regulation concerns motor vehicles. The more obvious reason for the rule is to prevent the loss of government property through theft or unauthorized use. To conclude that the regulation may fairly be interpreted as serving to protect the civilian motorists from drunk-driving soldiers is difficult. Such an incidental purpose is not inconceivable in view of judicial interpretations of statutes, similar on their face to the regulation here, as evidencing a purpose to protect the public. See Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (1943); Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74, 51 A.L.R.2d 624 (1954). We defer ruling on this question to afford plaintiffs the opportunity before trial on the merits to make further research and to inform the court of their findings.

Even assuming the Marine Corps regulation is not relevant to the question of negligence, there remains the question of whether the actions of Corporal Grunden meet the standard of care required of the "ordinary prudent man". This observation is nicely illustrated by the recurring cases where the defendant parks his car, leaving the key in the ignition lock, and the plaintiff is injured by the negligent driving of a thief who had stolen the defendant's car. On these facts some courts have found liability, or at least a jury question, at common law,[3] but more often liability is based on statute.[4] The majority of courts have refused to hold the defendant liable either with[5] or without[6] a

---

2. See the same case on appeal after remand, Williams v. United States, 379 F.2d 719 (5th Cir. 1967).

3. Mellish v. Cooney, 23 Conn.Sup. 350, 1 Conn.Cir. 234, 183 A.2d 753 (1962); Schaff v. R. W. Claxton, Inc., 79 App.D.C. 207, 144 F.2d 532 (1944); Alberone v. King, 26 Conn.Sup. 98, 213 A.2d 534 (1965); Mezyk v. National Repossessions, Inc., 241 Or. 333, 405 P.2d 840 (1965); Anderson v. Gengras Motors, 141 Conn. 688, 109 A.2d 502 (1954).

4. Ross v. Hartman, 78 App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (1943);

Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74, 51 A.L.R.2d 624 (1954); Garbo v. Walker, 129 N.E.2d 537 (Ohio C.P.1955) (ordinance); Padro v. Knobloch, 28 Misc.2d 898, 214 N.Y.S.2d 216 (1961); Justus v. Wood, 209 Tenn. 55, 348 S.W.2d 332 (1961), reh. denied 209 Tenn. 55, 349 S.W.2d 793 (1961); Kacena v. George W. Bowers Co., 63 Ill.App.2d 27, 211 N.E.2d 563 (1965).

5. Galbraith v. Levin, 323 Mass. 255, 81 N.E.2d 560 (1948); Anderson v. Theisen, 231 Minn. 369, 43 N.W.2d 272 (1950); Kiste v. Red Cab, Inc., 122 Ind.App. 587,

statute requiring locked cars. See Prosser, Law of Torts, 323 (3rd ed. 1964). The factual variations on this theme are almost as numerous as the cases. See Annot. 51 A.L.R.2d 633 (cars parked on street); Annot. 91 A.L.R.2d 1312 (cars parked off street).

A review of these cases reveals that the decisions of North Carolina are representative. Where a complete stranger to the defendant steals his car and collides with the plaintiff in making a getaway, the North Carolina Supreme Court found no liability as a matter of law, indicating that the same conclusion would result even if a car-locking statute existed. Williams v. Mickens, 247 N.C. 262, 100 S.E.2d 511 (1957). However, liability has been found when a motor vehicle was illegally parked where heedless children were known to be present, Campbell v. Model Steam Laundry, 190 N.C. 649, 130 S.E. 638 (1925); Arnett v. Yeago, 247 N.C. 356, 100 S.E. 2d 855 (1957); or where a two-year-old passenger turns the key, Pinyan v. Settle, 263 N.C. 578, 139 S.E.2d 863 (1965). On the other hand, where the defendant violates no statute and has no reason to anticipate meddlesome children, there is no liability. Herring v. Humphrey, 254 N.C. 741, 119 S.E.2d 913, 91 A.L.R.2d 1320 (1961). These cases illustrate that the foreseeability of the injury depends on the facts and circumstances of each case.

Circumstances which have permitted courts of other jurisdictions to find that the question of defendant's negligence should go to the jury include parking a truck with children nearby. Tierney v. New York Dugan Bros., 288 N.Y. 16, 41 N.E.2d 161, 140 A.L.R. 534 (1942); Hatch v. Globe Laundry Co., 132 Me. 379, 171 A. 387 (1934); leaving a passenger alone in a taxi with the key in the ignition, Bullock v. Dahlstrom, D.C. Mun.App., 46 A.2d 370 (1946); Pfaehler v. Ten Cent Taxi Cab Co., 198 S.C. 476, 18 S.E.2d 331 (1942); leaving a taxi unattended with the engine running, Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74, 51 A.L.R.2d 624 (1954); Block v. Pascucci, 111 Conn. 58, 149 A. 210 (1930); leaving the vehicle unlocked for a considerable length of time, Lee v. Van Buren & New York Bill Posting Co., 190 App.Div. 742, 180 N.Y.S. 295 (1920); public knowledge of defendant's practice of leaving keys in cars parked on his used car lot, Murray v. Wright, 166 Cal.App.2d 589, 333 P.2d 111 (1958); leaving a car unlocked on a used car lot when the defendant knew the keys to the car had been stolen, Anderson v. Bushong Pontiac Co., 404 Pa. 382, 171 A.2d 771 (1961); leaving an unlocked truck overnight in a disreputable neighborhood, Hergenrether v. East, 61 Cal.2d 440, 39 Cal.Rptr. 4, 393 P.2d 164; and parking truck with the key in it in front of a busy driveway, Anchor

106 N.E.2d 395 (1952); Corinti v. Wittkopp, 355 Mich. 170, 93 N.W.2d 906 (1959); Lingefelt v. Hanner, 125 So.2d 325 (Fla.App.1960); Frank v. Ralston, 145 F.Supp. 294 (W.D.Ky.1956), aff'd, 248 F.2d 541 (6th Cir. 1957); Hersh v. Miller, 169 Neb. 517, 99 N.W.2d 878 (1959); Permenter v. Milner Chevrolet Co., 229 Miss. 385, 91 So.2d 243 (1956); Ross v. Nutt, 177 Ohio St. 113, 203 N.E.2d 118 (1964); Call v. Huffman, La.App., 163 So.2d 397, writ refused 246 La. 376, 164 So.2d 361 (1964).

6. Richards v. Stanley, 43 Cal.2d 60, 271 P.2d 23 (1954); Williams v. Mickens, 247 N.C. 262, 100 S.E.2d 511 (1957); Curtis v. Jackson, 142 Me. 351, 54 A.2d

520 (1947); Lustbader v. Traders Delivery Co., 193 Md. 433, 67 A.2d 237 (1949); Roberts v. Lundy, 301 Mich. 726, 4 N.W.2d 74 (1942); Kalberg v. Anderson Bros. Motor Co., 251 Minn. 458, 88 N.W.2d 197 (1958); Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 372 P.2d 333 (1962); Bennett v. Arctic Insulation, Inc., 253 P.2d 652 (9th Cir. 1958); McAllister v. Driever, 318 F.2d 513 (4th Cir. 1963) (applying Md. law); Brooks v. El Encino Co., 216 Cal.App.2d 598, 31 Cal.Rptr. 24 (1963); Berluchaux v. Employers Mut. of Wausau, 182 So.2d 98 (La.App.1966); Canavin v. Wilmington Transp. Co., 208 Pa.Super. 506, 223 A.2d 902 (1966).

Hocking Glass Corp. v. Allen, 161 So.2d 853 (Fla.App.1964). In each of these cases a third party intervened to cause the injury, yet the defendant was held responsible. These cases show that reasonable minds can and have differed on this question of negligence and proximate cause, and that recovery has been permitted where the circumstances warrant.

Therefore, upon mature consideration, this court for the above reasons does ADJUDGE and ORDER that defendant's motion for summary judgment should be and it is hereby denied.

The court being of the opinion that this order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, it is accordingly certified by the District Court under Section 1292 of 28 U.S.C.A. as an interlocutory decision to be reviewed and determined by the Court of Appeals.

A copy of this opinion and judgment is directed to be sent to counsel of record.