**TEXAS–OKLAHOMA EXPRESS, INC.,** and Lee Armstrong, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 9–70.

United States Court of Appeals, Tenth Circuit.

July 27, 1970.

Rehearing Denied Sept. 2, 1970.

Lloyd Scurlock, Fort Worth, Tex. (Clayte Binion, and Rawlings, Sayers & Scurlock, Fort Worth, Tex., with him on the brief), for appellants.

Richard A. Pyle, U. S. Atty., Muskogee, Okl., for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

The defendants were charged by information with a violation of a Regulation of the Department of Transportation promulgated under 18 U.S.C. § 834. The Regulation provides: "Motor vehicles transporting class A or class B explosives shall not be left unattended at any time during the course of transportation." 49 C.F.R. § 397.1(b) (1969).

Upon trial to the court without a jury the defendants were found guilty and fined. They have now taken this appeal which challenges the sufficiency of the evidence to prove that the vehicle was "unattended," and to prove that the Regulation was "knowingly" violated.

The record shows that a trailer belonging to Texas-Oklahoma Express, Inc. loaded with class A explosives, and so marked, was left in a parking area near the truck stop operated by the defendant, Lee Armstrong. This trailer had been loaded with bombs at the Naval Depot at Savanna, Oklahoma, and taken from there a distance of about two miles to the Armstrong truck stop parking area. The trailer was so moved by an employee of Armstrong and was parked and left without a tractor attached. The direct evidence shows that the trailer was so parked nearly an hour. The witness for the United States, who was an investigator for the Federal Highway Administration of the Department of Transportation, testified that he saw the trailer parked, returned about ten minutes later and thereafter observed the trailer for a period of about forty minutes during which time no person was in or around the trailer. The trailer was so observed about six p. m., but during daylight in a slight depression in the parking area and located 700 to 750 feet distant from the Armstrong truck stop service station. At the truck stop employees of the defendant Armstrong were servicing trucks in the ordinary course of their duties, and they were the

nearest employees of Armstrong or of Texas-Oklahoma Express. During the period the trailer was observed by the witness, several other trucks and trailers parked in the parking area obscured the view from the trailer to the service station. The trailer was parked some fifty feet from the shoulder of the highway.

The loading of the trailer had been done pursuant to an agreement between Armstrong and Texas-Oklahoma Express whereby empty trailers would be left at the truck stop by Texas-Oklahoma Express and Armstrong would have his employees take them into the nearby Naval Depot where they would be loaded. These employees would then return the loaded trailers to the parking lot to be picked up by Texas-Oklahoma Express drivers who would take them to their destination.

The records of the Naval Depot show that the trailer in question was loaded and left the Depot at 2:55 p.m. the day that it was observed by the inspector. The bill of lading for the particular shipment shows that it was destined for Port Chicago, California, and was signed by "A. Clifton," who was an employee of Armstrong.

As indicated above, the defendants challenge the judgment of the trial court on the ground that the evidence did not show that the trailer was "unattended" by reason of the fact that it could be observed from the truck stop by Armstrong employees servicing trucks. The defendants did not put on any evidence, but stood on a motion for acquittal at the close of the Government's case.

The Transportation Department's investigator testified as to his observation of the trailer during the forty minute period and its location relative to the truck stop. The only testimony relating to any watch of the trailer by the employees in the truck stop or their duties was by this witness, who said upon cross-examination:

"Q. Do you know, Mr. Baptiste, whether or not there was somebody at the truck stop itself that had the duty of watching over that area?

"A. There was people servicing trucks in that area, yes."

This hardly constitutes proof that the attendants had any duty to observe the truck, in view of the fact that any observation they could have made of the trailer was obscured from time to time by other vehicles in the truck stop, and in view of the distance from the trailer to the truck stop.

In addition to the bare dictionary definition, "leaving a motor vehicle unattended" has been construed by the courts as related to particular facts, and expecially in reference to automobile theft insurance policies. The definition usually given requires that someone be in the car or in the immediate vicinity of the car who could prevent the theft. In Dreiblatt v. Taylor, 188 Misc. 199, 67 N.Y.S.2d 378, the court held that a vehicle watched from an apartment window was unattended. See the definitions in Cheatham v. General Ins. Co. of America, 371 P.2d 700 (Okl.); Primo Outfitting Co. v. Glens Falls Ins. Co., 269 App.Div. 906, 56 N.Y.S.2d 449, and Pinyan v. Settle, 263 N.C. 578, 139 S.E.2d 863. The courts consider the relationship of the risk to the presence of someone immediately available who could prevent it. It is apparent in the case before us that the trial court so evaluated the location of the truck.

There was clearly sufficient evidence to show that the vehicle was "unattended" as the term is used in the Regulation which is clear and definite.

The defendants also strongly urge on this appeal that the proof did not establish that the Regulation was "knowingly" violated. The penalty section, 18 U.S.C. § 834, states that: "Whoever knowingly violates any such regulation * * shall be fined. * * * " The defendants in this argument rely heavily upon Boyce Motor Lines v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367. Defendants also cite St. Johnsbury Trucking Co.

v. United States, 220 F.2d 393 (1st Cir.); United States v. Chicago Express, Inc., 235 F.2d 785 (7th Cir.), and Standard Oil Co. of Texas v. United States, 307 F.2d 120 (5th Cir.).

In the Boyce case, the Supreme Court had before it a Regulation which stated that the motor vehicles carrying explosives were required to follow routes which avoided congested areas as far as practicable. The indictment had been dismissed in the trial court and the only issue was whether the Regulation was sufficiently definite. The Supreme Court found the Regulation not to be unconstitutionally vague, but went on by way of dictum to say in part:

> "The statute punishes only those who knowingly violate the Regulation. This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid."

The Court also said that in order to sustain the conviction, the Government had to establish that there was another practical and safer route, and further that the carrier knew that there was such a safer route yet " * * * deliberately took the more dangerous route through the tunnel, or that petitioner willfully neglected to exercise its duty under the Regulation to inquire into the availability of such an alternative route."

If the dictum in Boyce is controlling, we do not read it as requiring an actual criminal or culpable intent. It says no more than where the carrier knows the alternatives and chooses one contrary to the Regulation, this is a knowing violation. As the Court said, if there was a safer route and the carrier knew it, but "deliberately" took the more dangerous one, that would be sufficient to establish a violation. The reference to "culpable intent" in the above quotation is so modified by the subsequent portion of the quotation where the Court states the requirements with particularity.

In the case before us, to follow the particular statements in Boyce, the carrier had the alternative of leaving the trailer attended or of leaving it unattended; it had knowledge of the safer alternative of having it attended but deliberately chose not to do so.

In Inland Freight Lines v. United States, 191 F.2d 313 (10th Cir.), we considered an asserted violation of the Interstate Commerce Commission Regulations pertaining to truck drivers' logs. The penalty was for a carrier to "knowingly and wilfully keep false records." We there said:

> "Wilfulness is a question of fact. But direct proof of its existence is not essential. It may be inferred from acts, conduct, and circumstances. And the inferences may be drawn from a combination of acts, conduct, and circumstances."

Also we went on to say that to warrant a conviction the logs must have been knowingly and wilfully kept and preserved, and "wilfully" as used meant deliberately, voluntarily, or intentionally as distinguished from inadvertently or negligently.

Here, under a Regulation similar to Inland, it is necessary to show but one step — that the trailer was intentionally left unattended, and not two steps — that a violation of the Regulation was intended and the truck was left unattended. There is here no issue of inadvertence or accident; only a voluntary act was demonstrated. This is sufficient under Boyce Motor Lines and Inland Freight. The reason for the failure to placard in United States v. Chicago Express, Inc., 235 F.2d 785 (7th Cir.), is not indicated in the opinion, but the court there said there must be shown " * * * a specific wrongful intent to violate the regulations. * * * " This, in our opinion, is the additional step not required to be shown. See the thorough examination of public welfare and malum prohibitum in Moris-

sette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288.

The court in St. Johnsbury Trucking Co. v. United States, 220 F.2d 393 (1st Cir.), applied an added requirement that there be shown an actual culpable intent to violate a Regulation relating to marking trucks carrying dangerous loads. However, the proof there indicated that the trucks were not marked by reason of an oversight by a prior carrier and by the defendant carriers' manifester. The court held that the Government had not proved that the carrier was aware of the danger and had deliberately chosen to transport the load without placarding its trucks or labeling its shipping papers, or had wilfully failed to take proper precautions. The court there also discussed corporate "knowledge"; however, we do not have such an issue on this appeal.

In the case before us, as contrasted to the St. Johnsbury case, the defendants were obviously aware of the dangerous nature of the load having originated the shipment of bombs at the Naval Depot, and having marked the trailer with a class A explosives placard. There was here no inadvertence as to the acts or omissions.

The defendants are charged with knowledge of the Regulation in question, and they admit actual knowledge; the proof shows they knew that the contents of the trailer were dangerous; that the trailer was deliberately placed in the location where it was observed by the witness, and that this location was of such distance from the truck stop that the employees there working cannot be said to have been "attending" the trailer.

Thus there was sufficient evidence that the trailer was knowingly left unattended as concluded by the trial court in finding the defendants guilty of the charge.

Affirmed.